## LEON J. B. SEXTON v. COUNTY OF WASECA AND ANOTHER.[1]

December 19, 1941.

No. 32,999.

*Weyl & Weyl,* for relators.

*H. H. Sturner, Gallagher & Madden,* and *Moonan & Moonan,* for respondent.

[1]Reported in 1 N. W. (2d) 394.

LORING, JUSTICE.

*Certiorari* to review a decision of the industrial commission awarding compensation to respondent for personal injuries. The questions presented are whether respondent was lawfully in the employ of the county at the time he was injured and whether relators are in a position to present the defense of illegality.

September 28, 1940, Arthur Larson was sheriff of Waseca county. He had at that time one paid deputy, who was jailer in charge of 11 or 12 prisoners. The sheriff had approximately 22 special deputies throughout the county who were not on salary. Some of them were deputized in order that they might supervise dance halls and were paid for that service by the proprietors of the halls. Others were deputized for special reasons, such as for the protection of property.

A prisoner who had waived extradition was being held at Mobridge, South Dakota, on charges originating in Waseca county. Sheriff Larson had planned to take the sheriff of Rice county with him when he went to get the prisoner. The record indicates that all of the special deputies were engaged in personal business of their own and not available for the service. It developed that the sheriff of Rice county could not go, so sheriff Larson asked the respondent, municipal judge of the city of Waseca, to accompany him on the trip. He was not appointed a deputy sheriff, but went along as an aid to the sheriff and was subsequently paid therefor by the county. On the way to Mobridge the car in which he and the sheriff were riding collided with another car, the sheriff was killed, and respondent severely injured. The industrial commission awarded compensation to respondent as an employe of the county.

It is the contention of relators that the employment of respondent as aid and assistant to the sheriff on the trip was incompatible with respondent's office as municipal judge, that the sheriff had no authority to engage the services of the respondent for the trip, and that the employment was against public policy and hence illegal. Relators emphasize the fact that there was, in their opin-

ion, no emergency which justified the employment and ·that the sheriff needed no assistant.

■ It was customary for the sheriff to engage an aid or assistant to go with him on such trips, because alone he could not safely drive the car and keep control of his prisoner. While there was no pressing emergency, yet under the general power of the sheriff to keep and preserve the peace of the county, to pursue and apprehend all felons, execute all process, etc. (Mason St. 1927, § 907), he had ample authority to engage a person to go with him in order that he might safely conduct his prisoner from Mobridge to Waseca.

■ Did respondent's office of municipal judge render the employment illegal and nullify the sheriff's action in engaging respondent to accompany him? Respondent was not a deputy sheriff, although a deputy sheriff might have performed the same duties had such deputy accompanied the sheriff. Respondent's employment was merely incidental to a two days' trip. Therefore, no question is presented of incompatibility between the office of municipal judge and that of deputy sheriff. Was it then against public policy for the sheriff to employ the municipal judge merely as an aid on the trip? So far as the county is concerned, it is not in a position to raise that question since it has ratified the employment by paying the respondent's bill. Reed v. Township of Monticello, 164 Minn. 358, 205 N. W. 258.

■ Certainly the insurer can be in no better position to attack the validity of the hiring than is the employer itself. Schultz v. Krosch, 204 Minn. 585, 284 N. W. 782. While as a matter of propriety we do not approve of the practice of a municipal judge under normal circumstances taking part in any way in the service of a warrant from his own court, we take the view that in the case at bar neither relator is in a position to question the legality of the employment.

Respondent is allowed $100 as attorneys' fees.

Writ discharged and decision affirmed.

STONE, JUSTICE (dissenting).

Because ethically this decision seems right, it is not an agreeable task to dissent on the ground that it is legally wrong. To me, it is plainly so on such basic and important grounds that statement of them seems justified.

It is not stated how the employment by a county of a municipal judge to do the work of a deputy sheriff, in apprehending a criminal to be tried before the judge, is not contrary to law and public policy. The offices of judge and prosecutor, of judge and sheriff are obviously incompatible. They are so much so that if a district judge should accept the office of sheriff and qualify therein he would automatically vacate his office as judge. State ex rel. Hilton v. Sword, 157 Minn. 263, 196 N. W. 467; 30 Am. Jur., Judges, §§ 41, 42; Annotations, 89 A. L. R. 1115; 100 A. L. R. 1162.

It would not be contended that the judge could remain such and also be a regular deputy sheriff. Emergency absent, how can he be both judge and deputy sheriff *pro tempore?* Yet he remains the judge.

The impartiality of justice is so essentially a goal of its administration that all contracts tending directly or indirectly to impair it are void as against public policy. "The rule is intended to keep public officers within the line of their duties, and not allow them to take advantage of their official position to make money by entering into engagements which tempt them to abuse the process of the courts, and oppress those who are to be affected by their official proceedings." Greenhood, Public Policy, pp. 337-338. "Public policy imperatively demands that no judge shall act under circumstances which will create distrust or cast doubt upon his impartiality, or raise an inference of the presence of sinister influence." Harris Estate v. West Grove Sav. Bank, 207 Iowa, 41, 53, 217 N. W. 477, 483.

That the county ratified use of the judge in the capacity of deputy sheriff does not make its insurer liable. The latter is under no obligation unless its insured, the county, was under the primary

obligation at the outset. If the contract is void as against public policy, the courts will grant no relief based on that contract. For example, the agreement being void, another agreement evidencing a compromise of it is equally so. Hackett v. Hammel, 185 Minn. 387, 241 N. W. 68. Pleaded or not, the appearance of invalidity abruptly stops any affirmative court action by way of relief to all parties whose rights must arise from and depend upon the void agreement.

There was no emergency. There is no suggestion of any need that the sheriff select a judge as his aid in extraditing the prisoner. There is no showing that there was not an abundance of other help willing at the moment to accompany the sheriff to South Dakota to do the job, get the ride, and enjoy the compensation sure to be paid by the county. If there had been an emergency, if there had been impossibility of procuring the aid of someone other than the judge, it may be assumed for present purposes that the employment could have been held valid. In the absence of valid employment and in the presence of such agreement as was made, which is void, it is respectfully submitted that there did not result between county and judge the relation of employer and employe. Without such relationship, there is no right to compensation.

It should be added that there is not the slightest indication that either judge or sheriff had any knowledge that their action was not proper in all its aspects. But this is a court of law and not of conscience.

Mr. Chief Justice Gallagher took no part in the consideration or decision of this case.