HAZEL M. ANDERSON, APPELLEE, v. THE BITUMINOUS CASUALTY COMPANY, APPELLANT, THE STATE OF NEBRASKA, APPELLEE.

52 N. W. 2d 814

Filed April 11, 1952. No. 33126.

*Kennedy, Holland, DeLacy & Svoboda, Edwin Cassem, Harry R. Henatsch,* and *Ferneau & Kiechel,* for appellant.

*Davis, Stubbs & Healey, Betty Jean Sharp,* and *Clarence S. Beck,* Attorney General, and *Clarence A. H. Meyer,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a compensation claim instituted in the Nebraska Workmen's Compensation Court by Hazel M. Anderson, widow of William M. Anderson, deceased, against The Bituminous Casualty Company, a corporation, insurance carrier for workmen's compensation for the county of Nemaha, Nebraska, and the State of Nebraska. Claimant contends William M. Anderson, upon whom she alleges she was wholly dependent for support, died on May 14, 1949, as a result of injuries suffered on May 12, 1949, in the course of and arising out of his employment as a law enforcement officer of the county of Nemaha and the State of Nebraska. She asked that she be granted such relief as she was entitled to under the workmen's compensation law.

The district court for Nemaha County, on appeal thereto, found William M. Anderson died as a result of injuries suffered in the course of and arising out of his employment with Nemaha County as a deputy or assistant to the sheriff thereof; that claimant was the widow of decedent and wholly dependent upon him for her support; and that The Bituminous Casualty Company, being the insurance carrier of workmen's compensation for Nemaha County, was liable for such compensation as the county is obligated to pay. Based on such findings the court rendered a decree in favor of the claimant and against The Bituminous Casualty Company for payments in the sum of $22 per week for a period of 325 weeks starting on May 12, 1949, for medical and hospital expenses in the sum of $286, and for burial expenses in the sum of $250. Her claim against the State of Nebraska was dismissed.

The Bituminous Casualty Company, a corporation, filed a motion for new trial and, from the overruling thereof, took this appeal. Claimant has cross-appealed from that part of the decree dismissing her claim against the State of Nebraska.

While differently stated in the assignments of error, the question presented by this appeal is, was William M. Anderson at the time he was injured an employee of Nemaha County within the meaning of the Nebraska Workmen's Compensation Act?

For the purpose of determining this question we consider the record de novo. See Solheim v. Hastings Housing Co., 151 Neb. 264, 37 N. W. 2d 212.

Admittedly, or without dispute in the evidence, the record discloses that William M. Anderson, who will hereinafter be referred to as decedent, and Hazel M. Anderson, claimant, were husband and wife and lived together in their home in Auburn, Nebraska; that claimant was wholly dependent upon decedent for her support; that they were respectively 53 and 52 years of age and had one son, Mac, Jr., age 27; that the decedent and his son, who will herein be referred to as the Andersons, operated a garage and machine shop in Auburn; that about a week before May 12, 1949, a Reverend Edward D. Byrd, who did not live in Auburn and was not known there, left a car in the Andersons' garage for the purpose of having some repairs made thereon; that for various reasons, not here material, the Andersons concluded that the car might have been stolen and therefore got in touch with Donald G. Grieb, a trooper of the Nebraska Safety Patrol, who was at that time stationed in Auburn and who will hereinafter be referred to as the patrolman; that the patrolman checked the car and discovered it had been stolen and requested the Andersons to get in touch with him whenever anyone came to get the car; that the Andersons called the patrolman on Wednesday, May 11, 1949, advising that the party was there to get the car; that the patrolman

and Harvey H. Kuenning, who was then sheriff of Nemaha County and who will hereinafter be referred to as the sheriff, proceeded to the Andersons' garage where they found a party of four who had come to get the car; that out of the group of four the officers arrested Reverend Byrd and he was turned over to the sheriff who placed him in the county jail in Auburn; that sometime before 8 a. m. the next morning, which was Thursday, May 12, 1949, by use of a dummy, Byrd tricked the sheriff and managed to escape from the jail; that the sheriff, upon being released by his wife, having been locked in a jail cell by the prisoner, called the patrolman; that the patrolman immediately reported to the jail; that after a brief discussion with the sheriff the patrolman called decedent; that in response to the call the Andersons reported to the jail and joined in the hunt for the escaped prisoner; that the Andersons continued in that search throughout the day and into the night; that in the evening decedent joined the patrolman and assisted him with a road block at a point on the highway about two miles north of Auburn; that sometime after 9:30 p. m. of that evening, while continuing to assist in conducting this road block, decedent was hit by a jeep and injured; and that, as a result of the injuries, he died on Saturday, May 14, 1949.

With reference to the sheriff having employed decedent to assist him in apprehending the escaped prisoner, we think the evidence, although somewhat in dispute, supports a finding as follows: That after the prisoner tricked the sheriff and managed to escape, the sheriff, upon being released from the cell by his wife, took immediate steps to retake the prisoner; that he called the patrolman, who responded; that after the patrolman arrived they discussed plans to get some help to search for the escaped prisoner; that the sheriff asked who the patrolman thought they could get; that the patrolman suggested the Andersons since they knew the prisoner, who was a stranger in Auburn; that the sheriff

suggested to the patrolman that he call the Andersons and have them come to the jail; that the patrolman called the Andersons, talking to decedent, telling him that Byrd had escaped and that they needed help in finding him; that decedent said they would be right up; that shortly thereafter the Andersons came to the jail; that the sheriff was present when they arrived; that they, including the sheriff, then discussed what they were going to do and the best way to do it; that all that day decedent joined in the search; that after supper, with the consent and approval of the sheriff, decedent joined the patrolman in maintaining a road block some two miles north of Auburn; and that while engaged in this work with one Elmer Chapp, who had replaced the patrolman when the latter was called into Auburn, decedent received the injuries which resulted in his death.

The evidence also shows that after his prisoner escaped the sheriff took full charge of trying to recapture him. That the sheriff thought it presented an emergency and that it was an urgent matter to retake the prisoner, which it was, is fully evidenced by what he did during the day. The sheriff not only called on the Nebraska Safety Patrol for help but put out a general alarm in the community, asked a National Guard unit, that was having a meeting, to join in the search, called on the police officers of Auburn for help, and formed a road block on the four highways out of Auburn, one in each direction, to prevent the escaped prisoner from getting out of the community by means of a car.

Section 48-115, R. S. 1943, of the Workmen's Compensation Act, insofar as here material, provides:

"The terms 'employee' and 'workman' are used interchangeably and have the same meaning throughout this act. The said terms include the plural and all ages and both sexes, and shall be construed to mean:

"(1) Every person in the service of the state or of any governmental agency created by it, under any appointment or contract of hire, expressed or implied, oral or

written, but shall not include any official of the state, or any governmental agency created by it, who shall have been elected or appointed for a regular term of office, or to complete the unexpired portion of any regular term; * * *."

Section 23-1704, R. S. 1943, relating to the authority of sheriffs, provides: "The sheriff and his deputies are conservators of the peace, and to keep the same, to prevent crime, to arrest any person liable thereto, or to execute process of law, they may call any person to their aid; and, when necessary, the sheriff may summon the power of the county."

Under circumstances such as here, where a person under arrest had escaped and the sheriff was in charge of and organizing the search to retake him, we think, under this statute, the sheriff had authority to and was justified in securing the services of the Andersons, who knew the escaped prisoner, a stranger in the community of Auburn, on sight. This, the evidence establishes, the sheriff did and we find decedent, at the time of his injuries, was, at the request of the sheriff, assisting him in his attempt to retake Byrd who had, at the time decedent was injured, not been recaptured.

This same result has been reached in other jurisdictions under similar fact situations and like or comparable statutes. In Gulbrandson v. Town of Midland, 72 S. D. 461, 36 N. W. 2d 655, the South Dakota court said:

"The statutes clothe either a sheriff or a town marshal with authority to call a private citizen into the service of the county or town respectively. By SDC 12.1001 it is provided 'The sheriff shall keep and preserve the peace within his county, for which purpose he is empowered to call to his aid such persons or power of his county as he may deem necessary. * * *' And by SDC 45.1112 it is provided '* * * and each town marshal shall possess, within the jurisdiction of the municipality,

all the powers conferred by law upon sheriffs to suppress disorder and keep the peace.'

"We are of the opinion that when a private citizen is so impressed into service by a peace officer (cf. SDC 34.1618) a contract of employment results, and the county or town so employing a citizen becomes liable to him for the reasonable value of the service he renders by direction of such officer and therefore one who receives an injury which arises out of and in the course of such an employment is entitled to compensation as provided in the South Dakota Workmen's Compensation Law. Such is the current of authority in other jurisdictions. County of Monterey v. Rader, 199 Cal. 221, 248 P. 912, 47 A. L. R. 359; Tomlinson v. Town of Norwood, 208 N. C. 716, 182 S. E. 659; Mitchell v. Industrial Commission of Ohio, 57 Ohio App. 319, 13 N. E. 2d 736; Millard County v. Industrial Commission, 62 Utah 46, 217 P. 974; Village of West Salem v. Industrial Commission of Wisconsin, 162 Wis. 57, 155 N. W. 929, L. R. A. 1918c, 1077; Vilas County v. Monk, 200 Wis. 451, 228 N. W. 591 and Balinovic v Evening Star Newspaper Co., 72 App. D. C. 176, 113 F. 2d 505.

"In writing of the cases we have cited supra, in Eaton v. Bernalillo County, 46 N. M. 318, 128 P. 2d 738, 742, 142 A. L. R. 647, Mr. Justice Sadler said, 'In each of the cases relied upon by appellee and cited, supra, the court was presented with facts affording jurisdiction (justification) to the sheriff, or his deputy, in impressing the service of a bystander in arresting, securing or conveying some dangerous character suspected of or charged with a violation of the criminal laws. Under such circumstances, it was logical to hold that the person injured while so assisting occupied the status of a deputy sheriff, and, hence, of an employee, thereby entitled him or his dependents, to compensation.' And again at a later point in that opinion in writing of the element of pay, it was said, 'It all comes back to the question whether the services of decedent

were commandeered. If so, then we may assume he would be entitled to the reasonable value of his services for the period employed, thus supplying the much discussed wage element.' "

As stated in Sexton v. County of Waseca, 211 Minn. 422, 1 N. W. 2d 394: "While there was no pressing emergency, yet under the general power of the sheriff to keep and preserve the peace of the county, to pursue and apprehend all felons, execute all process, etc. (Mason St. 1927, § 907), he had ample authority to engage a person to go with him in order that he might safely conduct his prisoner from Mobridge to Waseca."

And in County of Monterey v. Industrial Accident Commission, 199 Cal. 221, 248 P. 912, 47 A. L. R. 359: "Clearly the deceased was in the service of the county of Monterey by the appointment of its sheriff, who was vested with power to confer upon the deceased the authority of a deputy sheriff or peace officer of said county. (Pol. Code, sec. 4157, subd. 5; Pen. Code, secs. 150 and 723.) The sheriff may, without organizing a formal posse comitatus, orally summon to his assistance any person when he deems it necessary to effect an arrest. (2 R. C. L., p. 491.) The person thus summoned has all the authority of a formally deputized officer in such matter, and is in fact a de jure deputy sheriff. The deceased was at the time he was slain in the service of the county under appointment by a county officer, to wit, the sheriff." See, also, Shawano County v. Industrial Commission, 219 Wis. 513, 263 N. W. 590; Mitchell v. Industrial Commission of Ohio, 57 Ohio App. 319, 13 N. E. 2d 736.

Decedent was not formally deputized; that is, he was not appointed and confirmed nor did he take an oath or give bond. While this fact is not particularly raised and discussed by appellant it does appear in the evidence and is mentioned as a fact in the brief. But this fact would not defeat recovery. Under situations, such as

here, it is seldom practical to go through these formalities.

As stated in Millard County v. Industrial Commission, 62 Utah 46, 217 P. 974: "* * * it is generally held that one who is actually acting as a deputy sheriff under color of an appointment is such officer de facto, although his appointment was not made with the formalities required by statute (35 Cyc. 1522), * * *." See, also, Vilas County v. Industrial Commission, 200 Wis. 451, 228 N. W. 591; Gulbrandson v. Town of Midland, *supra;* County of Monterey v. Industrial Accident Commission, *supra;* Village of West Salem v. Industrial Commission, 162 Wis. 57, 155 N. W. 929, L. R. A. 1918C 1077.

The cross-petition raises the question of whether or not decedent was also an employee of the State of Nebraska. We think the patrolman, in calling the Andersons to assist, was acting at the request of and in behalf of the sheriff, who was in charge of organizing the search, and not as a patrolman of the Nebraska Safety Patrol. Consequently we do not think the evidence sufficient to establish the relationship of employer and employee between the State of Nebraska and decedent even if the patrolman had authority to create such a relationship. In view thereof we will not discuss the patrolman's authority in that regard. We find the dismissal of the claim as against the State of Nebraska to be correct.

The claimant asks that if the appellant fails to obtain any reduction by reason of its appeal that she be allowed an attorney's fee in this court. Section 48-125, R. S. 1943, provides: "* * * In the event the employer appeals to the district court from the award of the compensation court, or any judge thereof, and fails to obtain any reduction in the amount of such award, the district court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer, and the Supreme Court shall in like manner allow the

employee a reasonable sum as attorney's fees for the proceedings in that court."

In Gilmore v. State, 146 Neb. 647, 20 N. W. 2d 918, we held: "Under the provisions of section 48-125, R. S. 1943, where an employer appeals to the Supreme Court from an award of the district court and fails to obtain any reduction in the amount of such award, the Supreme Court shall allow the employee a reasonable sum for attorney fees for the proceedings in the Supreme Court."

Considering the amount involved and the fact that the case is one of first impression in this court we think a reasonable attorney's fee to be the sum of $600 and the same is taxed as costs.

In view of what has hereinbefore been said we affirm the judgment of the district court and direct that all costs, including the attorney's fee allowed in this court, be taxed to appellant, The Bituminous Casualty Company, a corporation.

AFFIRMED.