Teresa J. HEVELONE et al., Plaintiffs,

v.

Patrick J. THOMAS, Sheriff of Sarpy County, Nebraska, et al., Defendants.

Civ. No. 75–0–128.

United States District Court,
D. Nebraska.

April 8, 1976.

Charles Ledwith, Claude D. Shokes, Omaha, Neb., for plaintiffs.

Harry L. Welch, Omaha, Neb., for defendants.

DENNEY, District Judge.

This matter comes before the Court upon the motion of defendants for summary judgment [Filing # 11] subsequent to the submission of briefs and a hearing before the Court on March 23, 1976. The question presented is whether a sheriff and private persons who evict persons allegedly without due process of law pursuant to court order are immune from a suit for damages under 42 U.S.C. § 1983, the Civil Rights Act of 1871.

The pleadings, interrogatories, affidavits and exhibits reveal the following uncontroverted facts.

The events which culminated in this lawsuit emanate from a judicial proceeding instituted in State court. On March 29, 1974,

the Village of Springfield, Nebraska, brought an action for injunctive relief in the District Court of Sarpy County, Nebraska, against Ray Hevelone, Ralph Hevelone and Gale Hevelone, alleging that defendants commenced building a subdivision and development of tracts of land within one mile of the corporate limits of the Village of Springfield, without executing and securing approval of a subdivision plat, in violation of the zoning district's regulations and ordinances adopted pursuant to the authority vested in villages and cities of the second class under Neb.Rev.Stat. § 17–1001 (1974).[1] A temporary restraining order was issued restraining defendants from moving any more structures to the premises or finishing any work on those already there. A similar temporary injunction subsequently issued, followed by a permanent injunction directing defendants to vacate the occupied houses and to move all structures from the land. On November 21, 1974, an order was issued requiring the defendants to appear before the court to show why they should not be held in contempt for alleged disobedience of the injunction. Subsequent to several hearings, the Honorable Ronald E. Reagan held Ray Hevelone and Ralph Hevelone in contempt and on January 3, 1975, ordered the Sheriff of Sarpy County to evict the defendants from the houses occupied by them. The order reads as follows:

ORDERED that the Sheriff of Sarpy County Nebraska forcibly evict defendants from the houses which are the subject matter of this lawsuit between the hours of 8:00 A.M. and 10:00 A.M. on January 6, 1975, should defendants not have vacated the homes before that time; and it is

FURTHER ORDERED that the Sheriff, under the supervision of the Building Inspector of the Village of Springfield, install locks on all doors preventing entry into the homes, board up all windows, and take such other reasonable action as is necessary to prevent damage or vandalism to the homes; and it is

FURTHER ORDERED that the Sheriff has the authority to hire those persons necessary to assist him in effectuating this order, the wages and other expenses of such persons to be taxed as costs against the defendants in this case [Exhibit B].

On January 6, 1975, defendant, Patrick J. Thomas, Sheriff of Sarpy County, Nebraska, entered upon the farmstead owned by plaintiff Beulah D. Hevelone, wife of Raymond Hevelone, defendant herein. Acting under the order issued by the District Court of Sarpy County, defendant ordered plaintiffs, Beulah and Helen Hevelone out of their homes, threatening forcible removal of their persons if they did not comply. Beulah and Helen Hevelone complied with the order. Later in the day, employees of defendant, Harold Okeson, General Contractor, Inc. (hereinafter referred to as Okeson), arrived and placed padlocks on the doors of each of the two dwelling houses and boarded up the windows and doors.

Plaintiffs brought this suit in federal district court, alleging that the evictions and related actions of defendants were illegal and without due process of law because plaintiffs herein were not parties to the injunction action and contempt proceeding. Plaintiffs pray for compensatory and punitive damages and an order commanding defendant Sheriff to remove the padlocks and windowboards. Defendants have moved for summary judgment, upon the basis that they are immune from plaintiffs' claims.

In *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967), finding that "[t]he legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities" in enacting § 1983, the Supreme Court concluded that the common-law doctrine of absolute judicial immunity survived. The Court further held that § 1983 did not preclude application of the traditional rule that a policeman, making an arrest in good faith and with probable cause, is not liable for

1. *Village of Springfield v. Hevelone,* 195 Neb. 37, 236 N.W.2d 811 (1974).

damages, although the person arrested proves innocent.

The courts have delineated three types of immunity: (1) judicial immunity, (2) quasi-judicial immunity, and (3) qualified immunity. Judges enjoy absolute immunity, not to protect corrupt judges, but to protect public interest in permitting judges exclusive discretion without fear of vexatious litigation. Quasi-judicial officers such as clerks of the court and prosecutors are also afforded absolute immunity of a limited scope when they exercise judicial or quasi-judicial discretion. Other State officers, such as police officers, executive officers and school board members generally are not immune unless they act in good faith. *See generally Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1975).

The doctrine of quasi-judicial immunity was discussed by Judge Van Pelt in *Rhodes v. Houston,* 202 F.Supp. 624 (D.Neb.), affirmed 309 F.2d 959 (8th Cir. 1962):

[A]uthorities performing orders issuing from a court are provided immunity when they do nothing other than perform such orders. *Ravenscroft v. Casey,* 139 F.2d 776 (2nd Cir., 1944), cert. denied 323 U.S. 745, 65 S.Ct. 63, 89 L.Ed. 596 (1944). See also, *Thompson v. Baker,* 133 F.Supp. 247 (W.D.Ark.1955); *Allen v. Groat,* 283 F.2d 692 (6th Cir. 1960). 202 F.Supp. at 636.

Similarly, in *Duba v. McIntyre,* 501 F.2d 590, 592 (8th Cir. 1974), an action for malicious prosecution, false arrest and violations of § 1983, the Eighth Circuit Court of Appeals held that "[a] quasi-judicial form of immunity is extended to police and other court officers for purely ministerial acts where they do nothing other than perform orders issuing from a court."[2] (citations omitted). The fact that the Sheriff evicted

plaintiffs, who were not parties to the civil action, does not abrogate immunity. It is patently obvious that defendants could not have executed the court's order requiring that the doors be padlocked and the windows boarded without evicting all the occupants. Defendants' actions were authorized by the circumstances. *Cf. Wade v. Bethesda Hospital,* 337 F.Supp. 671, 673 (S.D.Ohio 1971).

The Court therefore concludes that the Sheriff enjoys absolute immunity from plaintiffs' damage claims. Although plaintiffs request a mandatory injunction requiring the Sheriff to restore plaintiffs to their property, the Court is without power to grant their requested relief. The Village of Springfield is not a party and clearly is not amenable to suit in this civil rights damage action. *See Monroe v. Pape,* 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The action for an injunction must be brought in State court by a collateral attack upon the State court judgment.

Although defendant Okeson's invocation of the doctrine of judicial immunity is not without difficulty, the Court concludes that defendant's employees occupied the position of deputy sheriffs de facto. Actions brought against private individuals acting in good faith under color of State law have generally been dismissed upon grounds other than immunity.[3] When the action under § 1983 is closely analogous to a wrong recognized in the law of torts, federal courts may apply the relevant tort principles bearing upon requisite mental elements. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 231–232, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Thus, where improper motive is an essential element of the analogous tort, as in malicious prosecution, good faith will preclude liability. *Tucker v. Maher,* 497

---

2. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) requiring good faith and probable cause when a policeman asserts qualified immunity, did not abrogate the absolute form of quasi-judicial immunity enjoyed by police when acting pursuant to judicial orders. Hence, police officers may enjoy both a qualified and an absolute immunity, depending on the circumstances of the case.

3. In *Sebastian v. United States of America,* 531 F.2d 900 (8th Cir. 1976), the Eighth Circuit implicitly held that a private person who acts in good faith is immune from damages under § 1983.

F.2d 1309, 1313–1315 (2nd Cir. 1974); *Whirl v. Kern,* 407 F.2d 781, 787–788 (5th Cir.), cert. denied 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). However, in the case at bar, not only did the court order authorize the Sheriff to employ Okeson, but such authority is also granted by statute. Neb. Rev.Stat. § 23–1704 (1974) provides as follows:

The sheriff and his deputies are conservators of the peace, and to keep the same, to prevent crime, to arrest any person liable thereto, or to execute process of law, they may call any person to their aid; and, when necessary, the sheriff may summon the power of the county.

In *Anderson v. Bituminous Cas. Co.,* 155 Neb. 590, 52 N.W.2d 814 (1952), the widow of an individual called into service pursuant to § 23–1704 instituted a workmen's compensation claim. The Supreme Court of Nebraska held:

Decedent was not formally deputized; that is, he was not appointed and confirmed nor did he take an oath or give bond. . . . But this fact would not defeat recovery. Under such situations, such as here, it is seldom practical to go through these formalities.

As stated in *Millard County v. Industrial Commission,* 62 Utah 46, 217 P. 974, 975: " * * * it is generally held that one who is actually acting as a deputy sheriff under color of an appointment is such officer de facto, although his appointment was not made with the formalities required by statute (35 Cyc. 1522), * *." 52 N.W.2d at 819.

This analysis is applicable to the facts of this case and it follows that defendant Okeson was also cloaked with judicial immunity in executing the court order.

Implicit in the Court's holding is that the defendants performed ministerial acts and did nothing other than perform the court's directive. *See McCray v. State of Maryland,* 456 F.2d 1, 5 (4th Cir. 1972). Recent Supreme Court decisions which have expanded on immunity under § 1983 have not discussed quasi-judicial immunity of clerks of the court and sheriffs. *See, e. g., O'Con-*

*nor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court holds that in any event defendants acted at all times in good faith. Sheriff Thomas had no information as to whether or not Beulah Hevelone was the owner of the two dwellings. Under the circumstances, there was no duty to question the judicial order.

The question before the Court is not whether plaintiffs were denied due process, but whether defendants are answerable to damages. Accordingly, the Court does not pass upon the constitutional question.

An Order is filed contemporaneously herewith in accordance with the findings delineated herein.