738 F.2d 271
 18 Ed. Law Rep. 591
 Robert E. McCURRY; H. Edward Rowe; Richard C. Moore; Greg
Dixon; Dennis Brown; Robert A. Collins; Richard L.
Weightman; Dennis A. Corle; Daniel Eylar; David A. Eylar;
Carroll L. Torberson; Carlton Curtis; Mark A. Bilbrey;
Olin R. Adams; Billy Arnold; Gary L. Arnold; Michael S.
Backhaus; Bill G. Brewer; Price Brown; Richard A. Cloyed;
John W. Curtis; Charles Day; Jesse Day; Stephen L.
Ferguson; J. Michael Gibbs; Earl Hargis; Allen R.
Kincaid; Francis J. Kuhlman; Larry L. Lautaret; Carl W.
Laurent; David H. Hydick; Richard May; George F. Monday;
Gerald L. Pope; Eric L. Rist; Philip A. Schmidt; Tumis
Schurman; Clifford Sims; Dennis A. Sims; Harry R. Smith;
Dale R. Spear; Edward L. Thibodeauz; Ronald L. Tottingham;
Gary J. Uit De Flesch; Leslie A. Warren; Jerry West;
Gary H. Williams; Samuel L. Woodruff; Dennis E. Fountain;
Carl Spencer, Jr.; Harvey Schultz; Gary Lee Peterson;
Ralph H. Liles; Michael McKinney; Alfred J. Riley; Dale
K. Dykema; Brandon Dykema; Howard Quinlan; Robert
Muncaster; Gary Lee Ashford; H. Lynn Bowen; Richard
Gregory; Michael Wolfram; Herbert Lawson; Phillip Liles;
and Jean Perry, Appellants,
v.
Fred TESCH, in his official capacity as Sheriff of Cass
County, Nebraska, and individually; Larry Shelbourn, in his
official capacity as Chief Deputy Sheriff of Cass County,
Nebraska, and individually; Raymond Syslo, in his official
capacity as a Captain of the Nebraska State Patrol, and
individually; Ronald D. Moravec, in his official capacity
as Cass County Attorney; Paul L. Douglas, in his official
capacity as Attorney General of Nebraska, Appellees.
 No. 83-2191.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 17, 1984.
Decided June 29, 1984.
 
 Jerry W. Katskee and Milton A. Katskee of Katskee & Henatsch, Omaha, Neb. and Paul L. Douglas, Atty. Gen. and Harold Mosher, Asst. Atty. Gen., Lincoln, Neb., for appellees.
 Michael P. Farris, Washington, D.C., for appellants.
 Before BRIGHT, ARNOLD and FAGG, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 This case arises out of a longstanding dispute between the State of Nebraska and the Faith Baptist Church of Louisville, Nebraska, concerning the church's operation of a school without complying with Nebraska school laws. Litigation began when the state obtained an injunction in state court prohibiting the operation of the school. The Nebraska Supreme Court affirmed, holding that enforcement of the school laws did not violate the defendants' rights of freedom of religion. State v. Faith Baptist Church, 207 Neb. 802, 817, 301 N.W.2d 571, 580, appeal dismissed for want of a substantial federal question, 454 U.S. 803, 102 S.Ct. 75, 70 L.Ed.2d 72 (1981).
 
 
 2
 Following this decision, the state trial court found that the school was still being operated in violation of the injunction and entered an order which provided, in pertinent part,
 
 
 3
 [A]s a means of enforcing its judgment [the Court] directs the Sheriff of Cass County to procure and install additional locks on each of the entrances to the church and school, it being one building, and to keep the building secured. The building is to be unlocked Saturday and Sunday and such other times as the building shall be used for the holding of church services.
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 The sheriff is further authorized to designate authority to his deputies or others for the patroling and or opening and closing of the building for the purposes indicated.
 
 
 7
 IT IS THEREFORE ORDERED, ADJUDGED AND CONSIDERED by the Court that the defendants, Reverend Everett Sileven and Faith Baptist Church, are in contempt of the orders of this Court and that the Sheriff of Cass County shall forthwith secure the building by the placing of locks on each of the entrances to the church; the building to be opened on Saturday, Sunday and Wednesday evenings for the singular purpose of religious services.
 
 
 8
 Order of September 11, 1981, Designated Record (D.R.) 44. The Reverend Mr. Sileven, pastor of the Church, and certain other defendants appealed this order to the Nebraska Supreme Court, but their appeal was dismissed for failure to file briefs. Sileven v. Tesch, 212 Neb. 880, 882, 326 N.W.2d 850, 852 (1982).
 
 
 9
 Meanwhile, the state court had told the sheriff not to enforce the September 11, 1981, order. But when the judge learned that the school had been reopened once more, he ordered Mr. Sileven jailed for contempt and entered another order, which provided, in pertinent part,
 
 
 10
 that the initial Order of September 11, 1981, directing the sheriff to secure the school building should be reinstated, directing the sheriff to secure the school building, the orders of this Court prohibiting the operation of a school for the teaching of non-religious subjects to be enforced. The building shall remain open on Wednesday evenings and throughout the weekend, the sheriff to withdraw security on Friday evenings at 5:00 p.m. and to enforce the order prohibiting the operation of a school on each Monday through Friday until further order of this Court.
 
 
 11
 IT IS THEREFORE ORDERED, ADJUDGED AND CONSIDERED by the Court that the Order of this Court entered September 11, 1981, shall be reinstated, the Sheriff of Cass County and his enforcement personnel to enforce the Order of this Court prohibiting the operation of a non-approved school, the first enforcement thereof to be exercised Monday, October 18, 1982; it being the intent of the Court that the parents of children attending thereat shall have advance notice of the action taken by the Court.
 
 
 12
 Order of October 14, 1982, D.R. 65-66.
 
 
 13
 Shortly after 6:00 in the morning of October 18, 1982, the sheriff arrived at the church with fifteen carloads of deputies and state troopers. About 85 persons, including the plaintiffs here, were conducting a "prayer vigil," singing, preaching, reading the Bible, praying, and so forth, to protest the jailing of Mr. Sileven and the closing of the school. No school children were present, and no classes were being held. When the worshippers refused to leave, the law-enforcement officers picked them up, carried them out of the church, and padlocked the building.
 
 
 14
 The plaintiffs brought this suit under 42 U.S.C. Sec. 1983 (1982) in the United States District Court for the District of Nebraska against the county, the state attorney general, the county attorney, and the sheriff and two other law-enforcement officers. The plaintiffs sought declaratory and injunctive relief and damages from the sheriff and the two other law-enforcement officers. The District Court dismissed the complaint, holding that the law-enforcement officers were absolutely immune from liability for damages and that the principles of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), prevented the court from granting prospective relief. The plaintiffs appeal. We reverse.
 
 I. THE DAMAGES CLAIM
 
 15
 The District Court held that the state-court orders of September 11, 1981, and October 14, 1982, required the defendants' actions here. Thus, relying on the principle that "a quasi-judicial form of immunity extends to police and other court officers for purely ministerial acts where they do nothing other than perform court orders," D.R. 88, the court held the law-enforcement officers absolutely immune from liability for damages.[1]
 
 
 16
 The plaintiffs argue that the state-court orders did not authorize their eviction from a church service; that if they did, the orders would be unconstitutional; and that, even if they were executing a court order, the law-enforcement officers are not clothed with absolute immunity, but rather with qualified, good-faith immunity. Since we agree with the plaintiffs' first two propositions, we need not reach the third.[2]A. The District Court's Analysis
 
 
 17
 The District Court interpreted the state-court orders to require the defendants to invade the church, remove the plaintiffs, and padlock the church:
 
 
 18
 The court directed the defendants to padlock the entire building beginning October 18, and they did. Obviously, the defendants could not execute the injunction and padlock the building without removing all the people in the building .... Although the plaintiffs allege that the defendants' actions disrupted a church service, this does not abrogate the defendants' immunity. Judge Case's orders did not give the sheriff the authority to decide that the building should not be padlocked because it was being used for church services, nor did they say that the sheriff could choose to padlock the building if he believed that terminating the church service was necessary to prevent the operation of the school later in the day.
 
 
 19
 D.R. 90 (citation omitted). Although the District Court held that it had no authority to rule upon the constitutionality of the orders thus construed, because "the proper way to contest its constitutionality is to appeal it to the Supreme Court of Nebraska," ibid.,[3] it said,
 
 
 20
 I do not doubt that the plaintiffs have a constitutional right to assemble in order to exercise their religion, but I am not at all sure that they had a right to assemble for religious purposes on the particular piece of private property that they chose to use.
 
 
 21
 D.R. 91.
 
 
 22
 The defendants, of course, urge us to uphold this analysis, and, at oral argument, elaborated on their interpretation of the state-court orders. They assert that the orders simply directed the sheriff to padlock the church building and to open it only on Saturdays, Sundays, and Wednesday evenings. If the plaintiffs wished to worship in the church at another time, for example, on Good Friday, they would have to get permission from the state court. The defendants agree with the District Court that the orders, thus construed, are constitutional, because the plaintiffs would be free to worship in any other place at any other time they chose. To support this proposition, the defendants point out that the state court would be free to close the church for violations of a local fire code.
 
 
 23
 We reject these arguments. We hold that the state-court orders did not authorize the law-enforcement officers' action here. If the orders are ambiguous, they should be construed against the authority asserted by the state, because orders conferring such authority would be unconstitutional. Thus, there is no ground for the application of absolute "quasi-judicial immunity," though, as we make clear later, those defendants against whom damages are sought may have a defense of qualified immunity.
 
 B. Interpretation Of The State-Court Orders
 1.
 
 24
 We do not believe that, by directing that the church building be opened for religious services on Saturday, Sunday, and Wednesday evenings, the state court intended that the building be padlocked at all other times. Otherwise, the provision that "[t]he building is to be unlocked Saturday and Sunday and such other times as the building shall be used for the holding of church services," Order of September 11, 1981, D.R. 44 (emphasis added), would be superfluous. Moreover, the state court emphasized that its purpose was to secure the enforcement of its prior judgment. That judgment simply enjoined the church and certain individuals from operating the unapproved school. It said nothing about prohibiting worship on the premises. Finally, an order opening and closing the church according to a strict timetable, without accommodating the legitimate religious interests at stake, would be patently unconstitutional, and it is therefore our duty to construe the orders to avoid such a result.
 
 2.
 
 25
 The right to worship free from governmental interference lies at the heart of the First Amendment. It embraces not only the right to free exercise of religion, but also the right to freedom of expression. The defendants' argument that these rights would not be burdened by an order restricting the times that the plaintiffs could hold religious services in the church to weekends and Wednesday evenings, because the plaintiffs would be free to congregate and worship elsewhere, misses the mark: " '[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.' " Schad v. Borough of Mount Ephraim, 452 U.S. 61, 76-77, 101 S.Ct. 2176, 2186-2187, 68 L.Ed.2d 671 (1981) (quoting Schneider v. State, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939)). This principle applies with particular force to places, such as church buildings, which have a special spiritual significance to the persons who wish to worship there.
 
 
 26
 Of course, as we recently observed,
 
 
 27
 [n]ot all burdens upon religion violate the free exercise clause. See United States v. Lee, 455 U.S. 252, 257-58, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982). The state may justify a limitation on religious liberty by showing that it is the least restrictive means of achieving a compelling state interest. Thomas v. Review Board, [450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981) ]. In articulating the standard the state must meet, the Supreme Court has said that "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." Wisconsin v. Yoder, [406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972) ].
 
 
 28
 Quaring v. Peterson, 728 F.2d 1121, 1126 (8th Cir.1984). We assume that the state's interest in preventing the operation of the unapproved church school is a compelling one. That interest does not in any event justify hauling worshippers out of an ongoing church service. The state could simply prevent school-age children from entering the building during school hours. Even if the state were to padlock the church and open it only when persons wished to enter in order to hold religious services, the burden on religious freedom would be less drastic than the action taken here. Thus, the state-court orders, if given the interpretation advanced by the defendants, would not be tailored narrowly enough to pass constitutional muster. Nor can the orders' validity be saved by construing them to give the state court, on application of the church, power to open the church doors on any given day. It is no part of the business of government in this country to decide when people may go to church. The First Amendment protects prayer at six o'clock on Monday morning just as much as at eleven o'clock on Sunday morning.
 
 
 29
 Because the state could achieve its objectives by less restrictive means, the defendants' analogy to fire-code violations is inappropriate. The state would not be able to fulfill its objective of protecting the public from the hazards presented by fire-code violations in any way other than closing the building; the building would not be safe for any purpose.
 
 
 30
 This distinction was drawn in a recent Eleventh Circuit case, Grosz v. City of Miami Beach, Florida, 721 F.2d 729 (11th Cir.1983). In Grosz the plaintiffs, Orthodox Jews, held religious services at least twice daily in their home in violation of an ordinance which prohibited churches and synagogues in areas zoned for single-family residential use. The plaintiffs' neighbors were disturbed by chanting and singing, people asking for directions, and the occasionally large numbers of worshippers in attendance. The plaintiffs brought suit in federal court seeking to enjoin the city from prosecuting them for violating the zoning ordinance.
 
 
 31
 The Eleventh Circuit denied relief. Reasoning that, in free-exercise cases, government interests must be balanced against the impugned religious interest, the court observed that "where the government suffers no burden in changing its actions to accommodate religious conduct, any sectarian interest regardless of how lightly it weighs wins the balancing." Id. at 734. The court held, however, that the city could not achieve its objectives in any manner less burdensome to the plaintiffs' interests. Id. at 738. On the other hand, the plaintiffs could conduct services in other areas of the city in which religious institutions could lawfully operate, and one such area lay within four blocks of their home. Weighing these considerations, the court struck the balance in the city's favor.
 
 
 32
 Here, we need not consider whether alternative sites for worship would be open to the plaintiffs. Our inquiry ends with the holding that the state could achieve its objectives in a way less burdensome to the free exercise of religion.
 
 C.
 
 33
 Since we hold that the state-court orders did not authorize the law-enforcement officers' actions here, those actions cannot be characterized as ministerial or merely in obedience to court directives. Thus, there is no basis for the application of absolute, quasi-judicial immunity. Further, our discussion in Part I.B., supra, demonstrates that the officers' conduct violated the plaintiffs' constitutional rights. Nonetheless, the officers may have a qualified immunity from liability for damages. On remand the District Court may, upon a proper motion, grant summary judgment in favor of the officers if it finds that the officers' conduct did not violate "clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[4]
 
 II. PROSPECTIVE RELIEF
 
 34
 In the course of reinstating the damages claim, we have held that the officers' action was unconstitutional. Since this amounts to a declaratory judgment and since the damages claim is now back in the case, there is no basis for abstention on the claims for prospective relief. On remand the District Court should enter a declaratory judgment in favor of the plaintiffs and address the issue of the defendants' qualified immunity. The plaintiffs indicated at oral argument that injunctive relief might not be necessary, and we leave that determination to the District Court's discretion.
 
 
 35
 Accordingly, the judgment of the District Court is reversed and the cause remanded for proceedings consistent with this opinion.
 
 
 36
 FAGG, Circuit Judge, dissenting.
 
 
 37
 I respectfully dissent. In my view, the district court's dismissal of plaintiffs' damage claims against the law enforcement officers was proper.
 
 
 38
 I take issue with the court's conclusion that the law enforcement officers were not acting in obedience with the orders issued by the state judge. In the September 11, 1981 order the judge issued the following command:
 
 
 39
 IT IS THEREFORE ORDERED, ADJUDGED AND CONSIDERED * * * that the Sheriff * * * shall forthwith secure the building by the placing of locks on each of the entrances to the church; the building to be open on Saturday, Sunday and Wednesday evenings for the singular purpose of religious services.
 
 
 40
 On October 14, 1982, the state judge reinstated his prior order and gave the following command to the Sheriff:
 
 
 41
 IT IS ORDERED, ADJUDGED AND CONSIDERED * * * that the Order of this Court entered September 11, 1982 shall be reinstated, * * * the first enforcement thereof to be exercised on Monday, October 18, 1982 * * *.
 
 
 42
 When these commands are read in a straightforward fashion, the officers were faced with an unpopular but clearly stated assignment. They were charged by a state judge with the responsibility to close and lock a church building on October 18, 1982, and to reopen it during specified periods.
 
 
 43
 When the state judge finally reached the point in his orders of directing the sheriff to take action, he did so with explicit, clearly stated commands. In arriving at its determination that the officers' actions were at variance with the orders, the court has failed to give the judge's clearly stated commands their proper weight. Instead, the court has directed its focus upon a pre-order recital that suggested generally that the church was to be open at such times as church services were being held. The state judge, however, translated this general statement into a very specific judicial command to the sheriff: that the building be locked at all times except Saturday, Sunday, and Wednesday evenings. The specific command did not leave the sheriff with discretion to permit religious services at any other times. The directions that were actually given to the sheriff clearly refute the court's statement that "[w]e do not believe that by directing that the church building be open for religious services on Saturday, Sunday, and Wednesday evening, the state court intended that the building be padlocked at other times." Ante at 275. Simply stated, the court is not in a position to rely upon a generalized pre-order recital for the purpose of construing the orders to the officers' detriment.
 
 
 44
 It is easy in hindsight to suggest that the officers would have been well advised to wait until the prayer vigil was over until locking the building. Nevertheless, the officers had to execute orders they did not draft and they had to carry out commands which they did not issue. It is too much to expect, as the court apparently does, that the officers employ legal canons of construction to interpret the orders issued by a state court judge. From the officers' standpoint, the judge's underlying intent and purpose were not their concern; nor was it of any consequence to the officers that judicial scholarship might be required subsequently to harmonize a generalized recital that otherwise "would be superfluous" or that the order would be construed to avoid an unconstitutional result. Ante at 275. Instead, the officers looked to the specific judicial command to "forthwith secure the building" and carried it out to the best of their ability. I am convinced that in locking the church building on October 18, 1982, the officers were acting in accordance with the specific judicial commands of the state court.
 
 
 45
 Thus, I would reach the question of what type of immunity from damages liability is to be accorded law enforcement officers that are acting pursuant to court orders. Judges acting within the scope of their authority have been accorded absolute immunity from suits. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Absolute immunity has also been extended to prosecutors for their decision to prosecute and their handling of the prosecution on the theory that these activities are intimately associated with the judicial function. Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The same protection has been extended to probation officers when preparing and submitting presentence reports because the officer is performing a judicially related function. Spaulding v. Nielsen, 599 F.2d 728 (5th Cir.1979); Burkes v. Callion, 433 F.2d 318 (9th Cir.1970), cert. denied, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971). For the same reasons that absolute immunity has been extended to prosecutors and probation officers participating in the presentence report process, I believe that law enforcement officers are entitled to absolute immunity when they are carrying out the orders of a court. See Tymiak v. Omodt, 676 F.2d 306, 308 (8th Cir.1982); Hevelone v. Thomas, 423 F.Supp. 7, 9 (D.Neb.), aff'd, 546 F.2d 797 (8th Cir.1976).
 
 
 46
 Courts not only expect but are entitled to insist upon an immediate, unquestioning enforcement of the court's directives. From the officers' standpoint, they must stand ready unhesitatingly to do what the judge tells them must be done. It would be anomalous for the court to punish obedient law enforcement officers by exposing them to civil damage liability based upon the shortcomings of orders drafted by absolutely immunized state judges. Furthermore, it would be unworkable for the officers to await interpretations from federal appellate judges rendered long after the orders were executed to learn whether they will be civilly liable for performing an assigned duty. In our judicial system, law enforcement officers are not privy to the judicial intent or purpose upon which orders are formulated; they are not allowed to reshape the judicial command; they are not authorized to interpret the order and then implement it in a fashion which coincides with their perception. It is not the officers' role to question whether an order is the correct one under the law; instead, their role is to execute the order as it is given.
 
 
 47
 In my view, law enforcement officers must be afforded absolute immunity from liability for money damages when they are executing court orders. I believe the officers' function in executing court orders is intimately and vitally associated with the judicial function. Courts have understandably been cautious in extending the protection of absolute immunity, and public officials "who seek absolute exemption from personal liability from unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." See Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). I believe the law enforcement officers have carried their burden in this case.
 
 
 
 [1]
 The District Court also held that the defendants were immune because "[a]n injunction issued by a state court which had proper jurisdiction must be obeyed unless it is transparently invalid or based on frivolous pretenses. Walker v. City of Birmingham, 388 U.S. 307, 315 [87 S.Ct. 1824, 1829, 18 L.Ed.2d 1210] (1967)." D.R. 91. Walker, however, merely held that the parties against whom an injunction was issued could be held in contempt for defying it. It had nothing to do with a law-enforcement officer's duty to execute court orders. This is not a contempt proceeding against the people who were in the church when the sheriff arrived
 
 
 [2]
 The scope of the so-called quasi-judicial immunity afforded law-enforcement and other officers who merely execute court orders is unclear. The principle relied upon by the District Court was first enunciated in this Circuit in Rhodes v. Houston, 202 F.Supp. 624, 636 (D.Neb.), aff'd per curiam, 309 F.2d 959 (8th Cir.1962), cert. denied, 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963), and has been repeated several times, see, e.g., Tymiak v. Omodt, 676 F.2d 306, 308 (8th Cir.1982) (per curiam); Guzman v. Western State Bank, 516 F.2d 125, 132 (8th Cir.1975); Duba v. McIntyre, 501 F.2d 590, 592 (8th Cir.1974) (per curiam), cert. denied, 424 U.S. 975, 96 S.Ct. 1480, 47 L.Ed.2d 745 (1976); Hevelone v. Thomas, 423 F.Supp. 7, 9 (D.Neb.) (alternative holding), aff'd per curiam, 546 F.2d 797 (8th Cir.1976)
 In Sebastian v. United States, 531 F.2d 900, 903 (8th Cir.) cert. denied, 429 U.S. 856, 97 S.Ct. 153, 50 L.Ed.2d 133 (1976), however, we held that deputy sheriffs who, pursuant to a court order, transported the plaintiff to a mental hospital were immune because they "acted at all times in good faith reliance on Arkansas law, without reason to believe that the appellant had been committed without notice and hearing." Finally, we have "held that court functionaries such as clerks are not clothed in [absolute] judicial immunity because their duties are ministerial, not discretionary, in nature," McLallen v. Henderson, 492 F.2d 1298, 1299 (8th Cir.1974) (citation omitted), but rather are protected only by a qualified, good-faith immunity, id. at 1300. But see Davis v. McAteer, 431 F.2d 81, 82 (8th Cir.1970) ("clerks of court are entitled to immunity the same as judges.")
 The conflict in these authorities may be more apparent than real, particularly in light of the Supreme Court's recent revision of the definition of qualified immunity in Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982), but we need not resolve the problem here. We merely note that we have never held "that the unquestioning execution of a judicial directive may never provide a basis for liability against a state officer." Sebastian, supra, 531 F.2d at 903 n. 6 (emphasis added).
 
 
 [3]
 We disagree. District of Columbia Court of Appeals v. Feldman, --- U.S. ----, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), which held that federal district courts do not have jurisdiction to review a state court's final judgment in a bar-admission matter, even if the state court's action is alleged to be unconstitutional, is not in point. The plaintiffs here are seeking damages from and equitable relief against law-enforcement officers. Moreover, most of the plaintiffs were not parties to the state-court proceedings and could not have sought review in the Nebraska Supreme Court. Accord, In re Justices of the Supreme Court, 695 F.2d 17, 26 (1st Cir.1982)
 
 
 [4]
 The fact that the officers acted under color of the state-court orders will be relevant to this inquiry. There may be enough ambiguity in the orders to warrant a determination by the District Court that the defendants reasonably believed that the orders mandated the action taken here and that the action was constitutional because a judge had ordered it