**Edwin DUBA, Appellant,**

v.

**W. Don McINTYRE et al., Appellees.**

No. 73-1724.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1974.

Decided July 18, 1974.

Blevens, Bartu & Blevens, Seward, Neb., for appellant.

Barlow, Watson & Johnson and Steven Flodman, Lincoln, Neb., for appellee McIntyre.

William T. Oakes, Omaha, Neb., and Mr. Donald Witt, Lincoln, Neb., for appellee Lissman.

Perry, Perry, Witthoff & Guthery, Lincoln, Neb., for appellee Ach.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

PER CURIAM.

Appellant-Duba brought this damage action for malicious prosecution, false arrest, and violation of 42 U.S.C. § 1983 in the United States District Court for the District of Nebraska (Senior District Judge Richard E. Robinson, presiding). Appellees, who are officials of Friend, Nebraska—Justice of the Peace W. Don McIntyre, City Attorney Bernard J. Ach, and Chief of Police Donald Lissman—moved for summary judgment on the grounds of judicial immunity. In an unreported opinion, Judge Robinson sustained the motions and dismissed the case.

The fundament of appellant's complaint is that appellees maliciously destroyed his business and violated his constitutional rights by attaching and selling off his entire stock of hogs, valued at several thousand dollars, on the pretense of satisfying a $55 misdemeanor fine. The underlying facts appear to be that on September 11, 1970, Duba entered a plea of guilty before Justice of the Peace McIntyre on a charge of unlawfully permitting some of his hogs to run at large upon the streets of the City of Friend, Nebraska; he was released on the condition that the $55 fine plus $4 costs be paid within one week. On September 24, 1970, City Attorney Ach issued and delivered to appellee-McIntyre an affidavit for a bench warrant, directing Duba's arrest and the attachment of all of his hogs "in order to satisfy the fine and costs herein as well as the fine and costs in subsequent cases filed for the same offense." The bench warrant was issued forthwith, Duba was arrested and detained for about one hour, and 110 of his hogs were attached, loaded, and removed to an auction barn in York, Nebraska, where they were sold the following day without bond, inventory, or advertisement.

In answer, appellees raise the defense of judicial immunity for the justice of the peace and, in turn, derivative immunity for the prosecutor and quasi-judicial immunity for the police chief. Judge Robinson concluded:

> The Court finds, upon the undisputed facts, that under the pertinent Nebraska law there was jurisdiction over the subject matter, and that notwithstanding acts done in an excess of jurisdiction the defendants are entitled to assert the defense of immunity.

The sole issue on this appeal is whether the doctrine of judicial immunity was properly invoked to shield the conduct of the appellees in this case. We hold that it was.

As the district court correctly noted, the common law rule of judicial immunity from liability for damages was not abrogated by the passage of 42 U.S.C. § 1983, Pierson v. Ray, 386 U.S.

547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and that immunity is absolute even though the judge may act in excess of his jurisdiction and'with malice. *Id.* at 554, 87 S.Ct. 1213. As a judicial officer, a justice of the peace has the benefit of this immunity. Stift v. Lynch, 267 F.2d 237 (7th Cir. 1959). A derivative form of immunity exists for prosecutors who will be cloaked with the same immunity granted to judges when they are acting within the scope of their proper prosecutorial capacity, rather than in an investigatory capacity. Barnes v. Dorsey, 480 F.2d 1057, 1060 (8th Cir. 1973). *See* Wilhelm v. Turner, 431 F.2d 177 (8th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 919, 28 L. Ed.2d 230 (1971). A quasi-judicial form of immunity is extended to police and other court officers for purely ministerial acts where they do nothing other than perform orders issuing from a court. Rhodes v. Houston, 202 F.Supp. 624, 636 (D.Neb.), aff'd, 309 F.2d 959 (8th Cir. 1962) (citing cases). The question therefore is whether the appellees were acting within the scope of their jurisdiction under Nebraska law.

■ The leading cases which we must turn to for guidance in determining whether the complained-of acts were done in the "absence" of jurisdiction or merely in "excess" of jurisdiction are Bradley v. Fisher, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871); Manning v. Ketcham, 58 F.2d 948 (6th Cir. 1932); and Wade v. Bethesda Hospital, 337 F. Supp. 671 (S.D.Ohio 1971). *Cf.* Jacobson v. Schaefer, 441 F.2d 127 (7th Cir. 1971). These cases instruct that the motivation of the judge is no test of his jurisdiction, and that malice goes only to aggravation of damages and that honesty of purpose goes only to mitigation. Manning v. Ketcham, 58 F.2d at 949. A useful test has been suggested in Wade v. Bethesda Hospital, where the court said:

> We begin by defining the concept of jurisdiction as it is used in the context of judicial immunity. The cases are clear that the term jurisdiction means that the judge must have both jurisdiction over the person and subject matter if he is to be immune from suit for an act performed in his judicial capacity. See, Thompson v. Heither, 235 F.2d 176 (6th Cir. 1956) and cases cited therein; Ryan v. Scoggin, 245 F.2d 54 (10th Cir. 1957). A third element, however, also enters into the concept of jurisdiction as used in this context. The third element is the power of the Court to render the particular decision which was given. See, Cooper v. Reynolds, 77 U.S. 308, 316, 10 Wall. 308, 19 L.Ed. 931 (1870); National Malleable & Steel Castings Co. v. Goodlet, 195 F.2d 8 (7th Cir. 1952); City of Phoenix v. Greer, 43 Ariz. 214, 29 P.2d 1062 (1934).
>
> A judge will not lose his immunity because of a mere error in judgment even though the resultant act be in excess of the Court's jurisdiction. Ryan v. Scoggin, *supra*; O'Bryan v. Chandler, 352 F.2d 987 (10th Cir. 1965) cert. den. 384 U.S. 926, 86 S.Ct. 1444, 16 L.Ed.2d 530, rehearing den. 385 U. S. 889, 87 S.Ct. 13, 17 L.Ed.2d 123. "Excess of jurisdiction" as distinguished from entire absence of jurisdiction, means that the act, although within the general power of the judge, is not authorized and therefore void, because conditions which alone authorize exercise of judicial power in the particular case are wanting and judicial power is not lawfully invoked. Pogue v. Swink, 365 Mo. 503, 284 S. W.2d 868 (1955).
>
> Consequently, the third element in the concept of jurisdiction as used in the context of judicial immunity necessitates an inquiry into whether the defendant's action is authorized by any set of conditions or circumstances. [337 F.Supp. at 673.]

■ In essence, Judge Robinson used this test to examine appellant's allegations in light of Nebraska law which clearly authorizes judicial officers including justices of the peace to issue executions to recover fines imposed for violation of municipal ordinances. *See*

Neb.Rev.Stat. § 17–564 (Reissue 1970);
§ 27–1601 (Reissue 1964). *Cf.* Cleaver
v. Jenkins, 84 Neb. 565, 121 N.W. 992
(Neb. 1909). Judge Robinson conclud-
ed:

> It is clear from the language of the
> Bench Warrant that the purpose was
> to aid in the execution and attachment
> and not to commit the plaintiff to jail
> until the fine and costs were paid, and
> the plaintiff's own evidence confirms
> that the purpose was *not* to commit
> the plaintiff to jail until the fine and
> costs were paid (Defendant's (plain-
> tiff's) Exhibit 8, pgs. 29–31). Other
> language relating to future fines· and
> costs goes to an excess of jurisdiction
> and is superfluous with respect to this
> action because there is no contention
> that any money was held for future
> fines and costs.

We think that Judge Robinson was
correct in holding that appellees' con-
duct, even though in excess of their ju-
risdiction, was within their general pow-
ers under Nebraska law and therefore
cloaked with immunity for the purpose
of a civil rights action under § 1983.[1]
We also approve Judge Robinson's wise
*caveat* regarding judicial immunity:

> The defendants should not interpret
> the shield of immunity as for their
> protection or benefit. As stated in
> Pierson v. Ray, *supra*, 386 U.S. at 554,
> 87 S.Ct. 1213 it is

> "(F)or the benefit of the public,
> whose interest it is that the judges
> should be at liberty to exercise their
> functions with independence and with-
> out fear of consequences."

> In order to benefit the public fully
> it is important to exercise good judg-
> ment.

*See* Scheuer v. Rhodes, 416 U.S. 232, 94
S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Affirmed.

---

1. This opinion, limited to recognizing the ap-
plicability under § 1983 of the common law
rule of immunity for the defendants in this
case, offers no view on whether plaintiff
would have a common law action under
Nebraska law in *indebitatus assumpsit,* and
possible damages against the state for the
recovery back of a fine which allegedly has
been illegally collected. If Nebraska recog-
nizes such an action in *indebitatus assumpsit,*
Nebraska state courts provide the proper
forum.