Waltruent Margarete Rosa MORRISON, Plaintiff-Appellant,

v.

William E. JONES, Donald L. Schroeder, Clayton Record, A. A. Younglove, Byron C. Morton, District Attorney for the County of Riverside, Paul R. Wiley, Director, and the Department of Public Social Services for the County of Riverside, Donald D. Sullivan, Clerk of the Superior Court for the County of Riverside, Edward T. Himento, M.D., Defendants-Appellees.

No. 77–1066.

United States Court of Appeals, Ninth Circuit.

Oct. 19, 1979.

As Amended on Denial of Rehearing Nov. 26, 1979.

Edison P. McDaniels, San Bernardino, Cal., for plaintiff-appellant.

Joyce Manulis Reikes, Riverside, Cal., for defendants-appellees.

Before BRIGHT,* HUFSTEDLER and ANDERSON, Circuit Judges.

PER CURIAM:

Morrison brought this civil rights action (42 U.S.C. §§ 1981, 1983) against the Board of Supervisors of the County of Riverside ("Board") and other named county officials who caused her minor son, Michael, a dependent ward of the Juvenile Court, to be transported to Germany, in violation of her constitutional rights. The district court granted summary judgment in favor of the defendants on the ground that each of the defendants was immune from liability. The defendants reassert their claims to immunity, and they argue, in addition, that Morrison had no standing to maintain the action, that she failed to exhaust her state remedies, that exclusive jurisdiction resided in the state court system, and that her amended complaint stated no claim for relief. We affirm the district court's grant of summary judgment in favor of Byron C. Morton, District Attorney, and Donald D. Sullivan, Clerk of the Superior Court, because both of them, under the circumstances of this case, are protected by absolute quasi-judicial immunity. We reverse summary judgment in favor of the remaining defendants.

Morrison is a German alien married to an American citizen. Her natural son Michael, is also a German alien. On July 16, 1970, when Michael was eight years old, he was sent by his grandparents, with whom he was living, to reside with his mother. From that time until his return to Germany, Michael was a lawful resident of the United States. According to Morrison, Michael was ill when he arrived. He "didn't play, sat for hours, paced in a square, weighed 38 pounds; . . . and was not taught to dress himself . . . ."

On November 11, 1972, Morrison had Michael admitted to the Children's Psychiatric Unit at Riverside General Hospital ("Hospital"), where the child was diagnosed as suffering from childhood schizophrenia with severe nutritional and emotional deprivation. On several occasions after his commitment, Morrison tried unsuccessfully to remove Michael from the care of the Hospital.

In December, 1972, the Hospital caused a petition to be filed in the California Superior Court, Riverside County, Juvenile Department, alleging that Michael was in need of proper care and control and that he had no parent capable of providing care and control. The record before us does not indicate the grounds supporting the dependency petition. On January 12, 1973, after notice to Morrison and a hearing, Michael was adjudged a dependent child of the court pursuant to section 600(a) of the California Welfare and Institutions Code. Michael was placed by a court order at the Children's Psychiatric Unit of the Hospital.

Morrison continued her efforts to recover custody of the child and to remove him from the Hospital. During the course of successive review hearings, commencing on July 13, 1973, the antagonism between Morrison and David W. Swan, a social worker for the Department of Public Social Services, became evident.[1] In each of these

---

* Honorable Myron H. Bright, United States Circuit Judge, Eighth Circuit, sitting by designation.

1. For example Mr. Swan's report, presented at the review hearing on July 13, 1973, said: "If Mr. and Mrs. Morrison continue to exhibit an uncooperative attitude toward the hospital, the hospital staff will probably recommend that Michael should not return to their home when he leaves the hospital."

review proceedings, Michael was continued as a ward of the court and his placement remained at the Hospital.

Michael was briefly returned to his mother, but upon the report that Michael's physical condition had deteriorated, Michael was removed from his mother's home on November 8, 1974. At a hearing shortly after Michael's return to the Hospital, Mr. Swan reported to the court that the hospital staff was "recommending that Michael be returned to the home of his grandparents in Germany. He is apparently still a German citizen, his grandparents are anxious to have him returned to them and they appear to be capable of arranging to meet his needs. Mrs. Morrison has indicated that she wants to have Michael returned to her home, but she would rather have him returned to his grandparents than remain in the hospital." In the Juvenile Court's order recommitting Michael to the Hospital, the court included, as an alternative to placement in the Hospital, residence with Michael's grandparents in Germany.[2]

On March 25, 1975, the Director of Public Social Services requested the County Board of Supervisors for Riverside County to approve funds to transport Michael, accompanied by an adult, to Germany. The Board approved the travel request and continued the fund transfer portion of the request until April 1, 1975, at which time the transfer of the necessary funds for transportation of the dependent child, and an adult companion, was authorized by the Board. No notice of either of these actions was ever given to Morrison by the Board.

According to Morrison, she first learned that county officials were going to transport her child to Germany when she read a newspaper story in the Riverside Daily Enterprise, dateline March 27, 1975, entitled "Youngster's Illness to Bring First Paid Trip Abroad by County Employe [sic]."[3]

After she read the newspaper article, Morrison for the first time obtained a lawyer, who filed on her behalf a writ of prohibition with the Superior Court of the County of Riverside to prevent Michael's deportation. The alternative writ was granted on April 3, 1975, directing Mr. Wiley to "desist and refrain from any further proceedings in the said action . . . until further order of this court thereon . . ." A hearing date was set for consideration of Morrison's request for modification of the December 27, 1974, dependency order. The cause was set for a contested hearing on May 1, 1975. The court also ordered a stay of the prior court order, permitting Michael's placement in Germany, until completion of the hearing scheduled for May 1, 1975, and until further order of the court. Because the prior petition for a writ of prohibition thereby became moot, the petition for the writ was dismissed.

Again, in the review hearing set for January 11, 1974, Mr. Swan reported the Morrisons' "lack of cooperation." He wrote: "For several months after Michael's placement at Riverside General Hospital, Mrs. Morrison was upset about his placement and did not cooperate with the treatment planned for him. At the present time, she and her husband are cooperating with the program although she is still anxious to have Michael return to her home and she exhibits a fear of signing any forms that pertain to Michael unless she is positive that she understands them . . . . [S]he said that the last time she signed a form at Riverside General Hospital, Michael was removed from her home."

2. The notation of potential placement of Michael with his grandparents in Germany was made by handwriting. Morrison has averred that this modification of the dependency order was not communicated to her at any time. The record contains no evidence that the minute order was served on her.

3. The news story quoted Paul R. Wiley, Director of Public Social Services, as advising the Supervisors that "the child's care costs $169 a day—more than $60,000 a year," but "[t]he cost of the one-way trip for the boy and a round trip for Allen [his therapist] will be about $1,500." The story also quoted Dr. Himeno, Director of the Children's Psychiatric Unit at Riverside General Hospital, as describing Michael as "very disturbed" and "extremely taxing for anyone to cope with." The same article stated, "Himeno urged his early return to Germany 'because he is taking valuable bed space on the unit and we do have patients waiting to be admitted once he is discharged.' "

The contested hearing was held on May 1, 1975, before Judge Gerald F. Schulte, juvenile court judge. On May 5, 1975, Judge Schulte denied Morrison's motion for termination of dependency and for physical custody of Michael. Neither Morrison nor her lawyer was given any notice of the May 5, 1975, order. On May 9, 1975, Michael was transported to Germany. Morrison first learned that Michael had been sent to Germany when she received a note signed by Mr. Swan of the Department of Public Social Services which, in its entirety, states: "This letter is to notify you that on Friday, May 9, 1975, Michael left the hospital to return to his grandparents' home in Germany."

Morrison filed a timely notice of appeal from the order of May 5, 1975. The appeal was later voluntarily dismissed.

Morrison filed this action in the district court on August 21, 1975, and she filed an amended complaint on November 26, 1975. The named defendants are William E. Jones, Donald L. Schroeder, Clayton Record, A. A. McCandless, and A. Norton Younglove, all members of the Board; Paul R. Wiley, Director, Department of Public Social Services for the County of Riverside; Byron C. Morton, District Attorney for the County of Riverside; Donald D. Sullivan, Clerk of the Superior Court for the County of Riverside; Department of Public Social Services for the County of Riverside; and Edward T. Himeno, M.D., Director of Child Psychiatry of the In-Patient Unit, Riverside General Hospital.

**I**

■ The district court correctly granted summary judgment in favor of the District Attorney, Byron C. Morton, and the Clerk of the Superior Court, Donald D. Sullivan. The record reveals that Morton's only participation in the events of which Morrison complains was the presentation of evidence at the contested hearing on May 1, 1975. He is clothed with absolute quasi-judicial

immunity because his "challenged activities [were] an 'integral part of the judicial process.'" *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

■ No averments of the amended complaint, supported by any evidence in opposition to the motion for summary judgment, charged Donald D. Sullivan, Clerk of the Superior Court, with any act or omission that caused injury to Morrison. At best, she has charged him with some kind of responsibility for her failure to receive notice of the May 5, 1975, order. His failure, if any, to perform a ministerial duty which was a part of judicial process is also clothed with quasi-judicial immunity. *Cf. Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973); *Smith v. Rosenbaum,* 460 F.2d 1019 (3d Cir. 1972). *See also Schuman v. State of California,* 584 F.2d 868 (9th Cir. 1978); *Gillibeau v. City of Richmond,* 417 F.2d 426, 429 n.4 (9th Cir. 1969). *Cf. Stewart v. Minnick,* 409 F.2d 826 (9th Cir. 1969).[4]

We cannot sustain the district court's holding that the remaining defendants were immune.

■ When the district court ruled that the Department of Social Services for the County of Riverside was immune from civil rights liability, the district court did not have the benefit of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court held that local governmental bodies were not wholly immune from section 1983 liability. The Court also observed that state law immunities, upon which the district court relied, cannot override a section 1983 cause of action. *See also Donovan v. Reinbold,* 433 F.2d 738 (9th Cir. 1970).

■ The members of the Board were not absolutely immunized from liability. The state statutory immunity afforded by California Government Code § 820.2 is inapplicable. *Monell v. Department of Social Services, supra,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. The Board's reliance upon

---

4. Judge Gerald F. Schulte, initially named as a defendant, was absolutely immune. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Morrison has not appealed from the judgment dismissing him from the action.

our holding in *Hoffman v. Halden,* 268 F.2d 280 (9th Cir. 1959) is misplaced. *Hoffman* has been overruled by a long line of Supreme Court cases beginning with *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *E. g., Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

■ As an alternative ground for supporting the summary judgment, the Board members suggest that they are entitled to the absolute legislative immunity of *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The Supreme Court has never decided whether individuals performing legislative functions on the purely local level should be afforded this type of absolute immunity, or whether they are entitled only to the qualified immunity allowed executive officials. *Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401, 412 n.26 (1979). We do not have occasion on the record before us to reach the issue because the record is too poorly developed to permit us to decide whether any or all of the acts attributed to the members of the Board were done in a legislative capacity.

On the fragmentary record before us, the members of the Board can claim no more than the qualified immunity afforded to executive officers upon standards laid down by the Supreme Court in *Scheuer v. Rhodes, supra,* and its spawn. The record is entirely inadequate to establish the subjective and objective elements of the good faith standard established by the Supreme Court. *Wood v. Strickland, supra,* 420 U.S. at 313–14, 321–22, 95 S.Ct. 992. *See also Procunier v. Navarette, supra,* 434 U.S. at 561–62, 98 S.Ct. 855; *Thomas v. Younglove,* 545 F.2d 1171, 1172–73 (9th Cir. 1976); *Lokey v. Richardson,* 600 F.2d 1265 at 1267 (9th Cir. 1979).

■ Paul R. Wiley, Director of the Department of Social Services, is an executive officer, and he can only avail himself of the qualified immunity of *Scheuer v. Rhodes,*

*supra.* Himeno, Director of Child Psychiatry of the In-Patient Unit at the Hospital, enjoys no greater immunity than Wiley. *O'Connor v. Donaldson, supra,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396.

■ Dr. Himeno was the Director of Child Psychiatry of the In-Patient Unit at Riverside County General Hospital. The court below found that Morrison had failed to make sufficient allegations that Doctor Himeno had caused any injury or participated in the conspiracy. However, the Complaint alleges that Doctor Himeno recommended to the Board that Morrison's son be sent to Germany since he was taking up valuable bed space. All that Dr. Himeno's affidavit states is that at all times material to the present cause of action, he acted within the scope of his duties as a director of the county hospital. In the absence of any other evidence, we believe that the allegations in the Complaint sufficiently averred participation by Dr. Himeno in the conspiracy to deprive Morrison of her son. Thus, we find that the summary judgment entered as to Dr. Himeno was inappropriate on this state of the record.

■ Each of these defendants suggests that he was immunized from liability because he was relying upon the court order dated May 5, 1975. The record, in its present state, does not support the contention. None of the defendants was ordered to transport Michael to Germany. None of the defendants, with the possible exception of Wiley, was authorized to change Michael's custody. In pertinent part, the minute order provided: "That the minor continue under the care, custody and control of Paul Wiley, Director of the Department of Public Social Services," and "[t]hat the existing commitment to the Children's Psychiatric Unit at the Riverside General Hospital remain in effect; except that as an alternate placement the minor may be placed by the director with the minor's grandparents in Germany." Furthermore, with some support in the record, Morrison avers that the May 5 order was effectively stayed by the earlier order of the court granting a

stay "until further order of the court." The May 5 order said nothing about the prior stay. In addition, California Code of Civil Procedure § 917.7 provides an automatic stay by operation of law for 30 days from the entry of a judgment or order of the Juvenile Court "allowing, or eliminating restrictions against, removal of the minor child from the state." [5]

## II

None of the procedural arguments advanced by the defendants to uphold the summary judgment have merit.

██ The contention that Morrison does not have standing to sue because she is merely asserting the rights of her child is frivolous. Morrison is not attempting to assert Michael's rights not to be transported to Germany. Rather, she is asserting her interest as the mother of the child to preserve her access to the child and her access to effective judicial relief, which, she alleges, the defendants' conduct destroyed. The defendants' alleged actions unquestionably caused injury to Morrison with respect to her relationships with her son. Those interests, based on familial concepts, recognized by custom and practice for generations, are protected under the Constitution. *E. g., Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (constitutionally protected interests of parent in custody of his or her child); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (right of parents to receive notice of state juvenile delinquency proceedings against their child). Morrison's injury in fact to her recognized legal interests is enough to grant her standing. *E. g., Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

██ The contention that Morrison's action was defeated because she failed to exhaust her state remedies is also legally frivolous. She was not required to exhaust her judicial or administrative remedies before she brought her civil rights action. *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Lane v. Wilson,* 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Whitner v. Davis,* 410 F.2d 24 (9th Cir. 1969).[6]

██ Equally unavailing is defendants' contention that the exclusive jurisdiction of Morrison's action lies in the state courts of California. Morrison is asserting federal rights secured by both the federal Constitution and federal statutes, and she is not relegated to the state court system to vindicate any of those claimed federal rights.

## III

██ Finally, the defendants argue that Morrison's amended complaint stated no claim against any of them upon which relief could be granted. Morrison's amended complaint was inartfully drafted, but we are required to construe complaints under the Civil Rights Act liberally. *Thomas v. Younglove, supra,* 545 F.2d 1171; *Marshall v. Sawyer,* 301 F.2d 639 (9th Cir. 1962). As we pointed out in *Marshall v. Sawyer,* the "only elements which need to be present in order to establish a claim for damages under the Civil Rights Act are that the conduct complained of was engaged in under

---

**5.** Because the May 5 order did not order removal of the child from the state and his transportation to Germany, we do not have occasion to decide whether an order that purported to transport the child out of the United States would have been valid.

Nothing in Welfare and Institutions Code §§ 368 and 738 authorizes a Juvenile Court to transport Michael to Germany because Michael, at the time of the order, was a resident of California, his mother was a California resi-

dent, and Wiley, in whose custody Michael was placed, was also a California resident.

**6.** The defendants' argument that Morrison has remedies to exhaust is particularly ironic because, according to the averments of the complaint, the defendants' own actions placed Michael beyond the reach of any process that either the state or the federal courts could issue, and, of course, the child's German grandparents were never subject to the processes of the courts of the United States.

color of state law, and that such conduct subjected the plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution of the United States." *Id.* at 646.

■ It is undisputed that each of the defendants acted under color of state law. At this preliminary stage of the proceedings, we cannot say that she has failed to state a claim for relief based upon her constitutionally secured rights to procedural due process of law and her substantive familial rights that have long been considered the "basic civil rights of man." *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). "The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska, supra,* [262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042] at 399, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma, supra,* 316 U.S. at 541, 62 S.Ct. 1110, and the Ninth Amendment, *Griswold v. Connecticut,* 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring)." *Stanley v. Illinois, supra,* 405 U.S. at 651, 92 S.Ct. at 1213.

Nothing we have said suggests that we have any opinion about the ultimate merits of Mrs. Morrison's action.

Affirmed in part, reversed in part, and remanded to the district court for further proceedings consistent with the views herein expressed.

The parties shall bear their own costs on appeal.