**Clifton FARMER and Addie Coppersmith, Plaintiffs,**

v.

**Lamar LAWSON and Jack Davis, Defendants.**

**Civ. A. No. C79–190R.**

United States District Court,
N. D. Georgia,
Rome Division.

March 2, 1981.

Thomas McKee West, Bowen, Derrickson, Goldberg, & West, Atlanta, Ga., for plaintiffs.

John T. Minor III and John P. Neal III, McMamy, Minor, Phillips & Tuggle, Dalton, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

On the evening of March 3, 1979, a number of law enforcement officials, including the two defendants, entered the premises of Clifton Farmer pursuant to a search warrant issued that afternoon by a Justice of the Peace in Whitfield County, Georgia. The defendants, in search of stolen property, found nothing, and were sued subsequently by the plaintiffs for violating the plaintiffs' civil rights. The cause of action arises from 42 U.S.C. § 1983; jurisdiction is founded on 28 U.S.C. § 1343(3).

Plaintiff Farmer owns certain property in Whitfield County. Located on the premises are his home, a second house (currently occupied by plaintiff Coppersmith but not

yet occupied on March 3, 1979), an A-frame structure, and a barn. On March 3, 1979, there was also a U-Haul truck parked in front of the then-unoccupied house which contained the belongings of Ms. Coppersmith who was about to move into the house.

Defendants Jack Davis and Lamar Lawson[1] have filed a motion for summary judgment.

The search of plaintiff Farmer's property was instigated by an informant who told Sheriff Lawson that certain tractors thought to be stolen were located on the Farmer property. The informant reported to Sheriff Lawson that he had seen tractors on the property. Sheriff Lawson relayed this information to Sheriff Davis and Detective Gribble of Whitfield County. Detective Gribble prepared an affidavit which stated that the informant was reputed to be reliable, and that the information furnished by the informant was based on his personal observation of the Farmer premises. Plaintiff's Exhibit # 2 (attached to Lawson deposition). Based on this affidavit, James H. Long, a Justice of the Peace in Whitfield County signed a search warrant on March 3, 1979 designating the premises of Mr. Clifton Farmer and the U-Haul truck as the targets of the search.

The law enforcement officials arrived at the premises at approximately 11:00 P.M. that rainy night. Both defendants contend that they attempted to drive up to the plaintiff's house but that it was too muddy. Defendant Davis stated that there were no lights on in the Farmer residence, and he did not remember seeing a car parked at the house. The officers drove to the second house (soon to be occupied by Ms. Coppersmith) and got out of their cars. Virtually every officer on the scene has either been deposed, or prepared an affidavit. All are in agreement that they walked into the open barn, looked at the tractors which were in there, but never entered the A-frame, the unoccupied house, or the U-Haul[2] prior to Mr. Farmer's arrival on the scene fifteen minutes after the officers arrived.

Mr. Farmer has been deposed and stated that he saw flashlights at the scene from his bedroom window 600 feet away. He took out his binoculars and, "I [saw] lights all over there around that truck" (Farmer deposition at 19); "I looked down and there was approximately ten lights, just, you know, going through the thing (indicating), and they were there at the truck" (id. at 20); "So they left the truck and in about five minutes or something, they moved out to the A-frame, the little A-frame and they was all going in and out it. You know, you could see the lights going in, the whole bunch went there." (id. at 22). Mr. Farmer also claims that the mattresses and clothes in the U-Haul were wet and muddy the next day, and had to be cleaned. The family Bible was found in the mud beside the truck the next day.

After watching the activities from his bedroom window for between five and fifteen minutes, Mr. Farmer joined the officers. Mr. Farmer exchanged harsh words with certain members of the posse, and then ushered Sheriff Davis into the unoccupied house. The officers left the scene shortly thereafter.

## II

Defendants have moved for summary judgment arguing that (1) the plaintiffs had no expectation of privacy in the premises searched; (2) plaintiff waived any constitutional protection with respect to the second house; (3) the search was properly conducted; (4) the search was conducted pursuant to a valid search warrant; and (5) the defendants are immune because they acted in good faith.

On December 17, 1980, the Court rendered some tentative holdings and request-

---

1. Lamar Lawson died on January 10, 1980. The Court has substituted Fay Lawson for Lamar Lawson, individually. Robert Lawson, the current sheriff of Bradley County, Tennessee, has been substituted in his official capacity.

2. The officers agree that the rear of the U-Haul was opened, and one or more officers looked in, but no officer entered the trailer.

ed that the parties furnish additional briefs. Specifically, the Court suggested that (1) the warrant was issued improperly because of the absence of any grounds for believing that the two tractors (among others) viewed by the informant were stolen property; (2) the plaintiffs had an expectation of privacy in the premises; and (3) the defendants acted in good faith when they executed the search warrant. Additional briefs were requested on the following questions: (1) does the failure of a peace officer to announce his presence amount to a constitutional violation if the areas searched (such as garages, barns or automobiles) are unoccupied, but are on the property of the owner who is in his house; and (2) if the answer to "1" is affirmative, do the defendants in this case have a good faith defense if the Court should find [3] that they did enter the U-Haul or one of the other structures without announcing their presence to plaintiff Farmer.

### III

#### A

■ The inadequacies of the affidavit upon which the Justice of the Peace issued the search warrant are obvious. "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation." *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933); *Aguilar v. Texas,* 378 U.S. 108, 112, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The only facts presented in the affidavit were that an informant had seen two specific tractors (brand names) and "other tractors and tillers used in farming" on the premises of the plaintiff; and that the informant believed them to be stolen. The first fact—the presence of farm equipment on a farm—simply does not impress the Court as grounds for

issuing a search warrant. The second fact—the informant's belief that the farm equipment was stolen—fails to support the issuance of a search warrant under the *Spinelli* rule: the tip must contain a sufficient statement of the underlying circumstances from which the informer concluded that the plaintiff had stolen property in his possession. *Spinelli v. United States, supra,* at 416, 89 S.Ct. at 589. It is not with "hypertechnical scrutiny", *United States v. Williams,* 605 F.2d 495, 497 (10th Cir. 1979), that the Court reaches this result. The affidavit does not show "facts and circumstances ... [which] would warrant a man of reasonable caution to believe that the articles sought [i. e., *stolen* farm equipment] were located at the place where it was proposed to search." *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir. 1977). Of course, the inadequacy of the informant's tip does not *ipso facto* invalidate the search warrant since independent corroboration can be supplied by police investigation. *United States v. Rasor,* 599 F.2d 1330, 1332 (5th Cir. 1979). No such corroboration, however, appears to have been furnished to the justice of the peace.

#### B

In the December 17, 1980 order, the Court indicated that its preliminary research compelled a holding that the defendants were immune from liability for executing the search warrant because the issuance of the warrant by the justice of the peace justified the defendants in believing that the search was legal. A more thorough review of the law, however, reveals that this issue should not be resolved by summary judgment, but should be decided by the fact-finder following trial.

■ Police officers, sheriffs and deputies are enshrouded with a qualified immunity from § 1983 liability. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). If the sheriff acts in good faith, he

---

**3.** *Of course, findings of fact will be made after a trial, not on a motion for summary judgment. The question was posed to determine whether* summary judgment would be appropriate even if the facts were as the plaintiff alleged.

will not be subject to damages for his acts which deprive an individual of constitutional rights. *id.* The good faith defense has both an objective and a subjective component: an officer or sheriff is not acting in good faith if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the plaintiff's constitutional rights. *Cf. Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975); *O'Connor v. Donaldson,* 422 U.S. 563, 576–77, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975); *Bivens v. Six Unknown Named Agents,* 456 F.2d 1339, 1348 (2d Cir. 1972) (on remand). Nor does the immunity doctrine protect an official whose subjective intent was to harm the plaintiff, regardless of the official's knowledge of constitutional law. *Cruz v. Beto,* 603 F.2d 1178, 1183 (5th Cir. 1979).

In arguing that the existence of a facially valid search warrant shields the defendants from liability, the defendants claim that cases decided in the context of an arrest made pursuant to a facially valid arrest warrant or indictment provide the Court with the surest guide. In *Rodriguez v. Richey,* 556 F.2d 1185 (5th Cir. 1977), for example, a plurality held, "if the facts supporting an arrest are put before an intermediate such as a magistrate or grand jury, the intermediate's decision breaks the causal chain and insulates an initiating party." *id.* at 1193. Similarly, a public official acting pursuant to a court's directive is generally held immune from suit, such as a sheriff seizing property. *See e. g., Meyer v. Curran,* 397 F.Supp. 512, 519 (E.D.Pa.1975); *Hevelone v. Thomas,* 423 F.Supp. 7, 9 (D.Neb.1976); *Duba v. McIntyre,* 501 F.2d 590, 592 (8th Cir. 1974). A police officer acting in reliance on a departmental standard operating procedure *may* also be immune despite the procedure's unconstitutionality. *See, Gross v. Pomerleau,* 465 F.Supp. 1167, 1175–76 (D.Md.1979).

Indeed, a cursory reading of the cases involving a search warrant indicates that an officer's or sheriff's reliance on a warrant will not lead to § 1983 liability. *Bezdek v. City of Elmhurst,* 70 F.R.D. 636, 639 (N.D. Ill.1976) ("the [officer's] affidavit shows that [he] acted with good faith in securing a search warrant to seize items he reasonably believed to be obscene. [The second officer] similarly acted reasonably in executing a warrant that was valid on its face, signed by the appropriate judicial officer. It was [the officer's] legal duty to execute such a warrant and therefore, under the instant facts, his action is immune from a § 1983 damage action."); *Ellenburg v. Shepherd,* 304 F.Supp. 1059, 1061–62 (E.D.Tenn.1966) ("officers who act under a search warrant properly supported by affidavits and issued after judicial approval, in making a search and seizure of property are protected by such warrant from civil liability."); *Commonwealth v. Sincavage,* 439 F.2d 1133, 1134 (3rd Cir. 1971) ("A peace officer who acts in good faith and in a reasonable manner in executing a search warrant issued by a judicial officer is not made liable in damages under 42 U.S.C. § 1983 upon a showing that the judicial officer erred."); *Madison v. Manter,* 441 F.2d 537 (1st Cir. 1971).

Each of these search warrant cases, however, is premised on the finding that the officer acted in good faith in securing the search warrant. The *Bezdek* court found that the officer acted in good faith in seeking the warrant and reasonably believed the items to be seized were obscene; the *Ellenburg* court found that the search warrant was properly supported by affidavits; and the *Sincavage* court found that the officers had acted in good faith.

■ Other cases have held that the existence of a valid search warrant does not raise an impenetrable shield protecting the officer from liability. In *Guerro v. Mulhearn,* 498 F.2d 1249 (1st Cir. 1974), the court recognized that a search warrant and wiretap obtained on the basis of perjured testimony, and in bad faith, was grounds for § 1983 liability. *id.* at 1255. *Cf. Rodriquez v. Ritchey,* 556 F.2d 1185, 1194–95 (5th Cir. 1977) (Hill, J. concurring). In *Baskin v. Parker,* 602 F.2d 1205 (5th Cir. 1979), the Court wrote,

On September 17, 1974, Curtis L. Smith, a deputy sheriff for Winn Parish obtained warrants to search the Baskin [plaintiff's] properties, including 120 acres owned by the J.A. Baskin estate, for marijuana and related paraphernalia. Smith lacked probable cause to obtain the warrants because his informants were not credible, and he knew or should have known that the information that had been supplied to him was based on personal grievances against Gary Baskin. The trial court found that, under the circumstances, he had a duty to check the allegations for distortion, misconception or outright untruth.

*Id.* at 1207. These cases reveal that the existence of a facially valid search warrant is not necessarily sufficient to find that the officers acted in good faith. The officers must act in good faith in their efforts to obtain the warrant.[4]

The questions for the fact-finder are whether the sheriffs knew or should have known that the search warrant was invalid and whether the sheriffs acted in good faith in securing the search warrant. The burden of proof is on the defendants to demonstrate that their actions were taken in good faith. *Douthit v. Jones,* 619 F.2d 527, 533–34 (5th Cir. 1980); *Skehan v. Bd. of Trustees of Bloomburg St. College,* 538 F.2d 53, 61–62 (3d Cir. 1976). These questions cannot be answered on the basis of the record as it now stands.

The state of mind of the defendants in seeking a search warrant with inadequate cause, and in executing that warrant are questions which must be decided at trial,

and not by summary judgment. *See, Shifrin v. Wilson,* 412 F.Supp. 1282, 1295 (D.D.C.1976); *Morrison v. Jones,* 607 F.2d 1269, 1274 (9th Cir. 1979); *Milwaukee Mobilization For Survival v. Milwaukee County Park Com'n,* 477 F.Supp. 1210, 1222 (E.D. Wisc.1979); *Cf. Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).

### C

The Court has received additional briefs from counsel on the following issues: (1) whether the defendants' failure to announce their presence on the premises violated the plaintiffs' constitutional rights and (2) whether the defendants can successfully depend on a good faith defense if their unannounced entry did violate the plaintiffs' constitutional rights.

After further consideration, the Court has decided to defer ruling on these novel questions. If at trial, the Court should find[5] that the defendants have not established their good faith defense to liability for executing the warrant, then these questions will not have to be decided: The legality of the manner of execution will be irrelevant if the fact of execution will support an award of damages.

If, on the other hand, the Court finds that these issues require resolution, then a decision will be reached at trial.

ACCORDINGLY, defendants' motion for summary judgment is DENIED.

---

4. The cases cited earlier are also inapposite to this case. In *Meyer v. Curran,* supra; *Hevelone v. Thomas,* supra, and *Duba v. McIntyre,* supra, the officers were engaged in mere ministerial acts, and were not involved in the procurement of the Court's directive. Indeed, "following orders" is not in itself grounds for immunizing the defendant. *See e. g., Zarcone v. Perry,* 572 F.2d 52 (2d Cir. 1978) (obeying judge's order is no defense); *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir. 1975) (obeying police chief's order is no defense).

In *Gross v. Pomerleau,* supra, the Court also required that the officer act in good faith in his

reliance on the unconstitutional "official policy" in order to be immune from liability.

In *Rodriquez v. Ritchey,* 556 F.2d 1185 (5th Cir. 1977), the Court never reached the issue of good faith immunity because it concluded that the plaintiff was not deprived of any constitutional right. The language cited above from the *Ritchey* decision pertained to the count alleging common law false imprisonment, not the existence of good faith.

5. The plaintiffs have waived their right to a jury trial.