898 F.2d 1470
 Rocky James TURNEY, Plaintiff-Appellant,
v.
James O'TOOLE, individually, as Superintendent of Central
State Griffin Memorial Hospital, a state hospital of the
Oklahoma Department of Mental Health; Jamie Featherston,
individually as Psychologist of Central State Griffin
Memorial Hospital, Defendants-Appellees.
 No. 88-1267.
 United States Court of Appeals,
Tenth Circuit.
 March 26, 1990.
 
 Susan Manchester, Oklahoma City, Okl., for plaintiff-appellant.
 Robert H. Henry, Atty. Gen. of Oklahoma, Robert A. Nance, Asst. Atty. Gen., Deputy Chief, Federal Div., Oklahoma City, Okl., for defendants-appellees.
 Before ANDERSON, BARRETT, Circuit Judges, and THEIS,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Plaintiff-appellant Rocky James Turney appeals from a summary judgment in-favor of defendant-appellees James O'Toole and Jamie Featherston. The district court held that the defendants were absolutely immune from a damages suit, and dismissed Turney's action. We affirm in part and remand for further proceedings.
 
 BACKGROUND
 
 2
 Late on the night of Friday, April 3, 1987, Special Judge John Wolking of the District Court of Canadian County, Oklahoma, received a phone call from Dr. Margaret Mehle of Parkview Hospital, a private facility in El Reno, Oklahoma, concerning Rocky Turney, a seventeen year old juvenile who Dr. Mehle said was violent, suicidal and in need of mental treatment. In response, Judge Wolking verbally ordered that Turney be placed in protective custody and taken to Central State Griffin Memorial Hospital ("Central State"), a public facility in Norman, Oklahoma. R.Vol. I, Ex. C at 13 (Wolking affidavit). Defendant-appellee O'Toole is the superintendent of Central State. Id. at 18 (O'Toole affidavit). Defendant Featherston is a psychologist at that facility. Id. at 21 (Featherston affidavit).
 
 
 3
 Turney was then transported to Central State. The physician on duty telephoned Judge Wolking, who confirmed that he had ordered Turney confined there for treatment. Id. at 24 (Holloway affidavit). Turney was then placed in the adult maximum security unit, known as Ward 28c. R.Vol. I, Ex. F at 28 (Turney affidavit). When efforts to find a more suitable placement failed, Central State's patient advocate secured a writ of habeas corpus[1] on Wednesday, April 8, and Turney was released into the custody of his parents. R.Vol. I, Ex. C at 22 (Featherston affidavit).
 
 
 4
 Turney filed suit under 42 U.S.C. Sec. 1983 against O'Toole, Featherston, and other defendants who have since been dismissed from the action. The complaint alleged that Turney's constitutional rights were violated, mostly because of his juvenile status under Oklahoma law, both by the fact of his confinement at Central State, and by the conditions of that confinement. See R.Vol. I, Ex. A at 12. The district court held that O'Toole and Featherston were absolutely immune from liability, and dismissed the suit. See R.Vol. II at 25-26. We hold that O'Toole and Featherston were absolutely immune from liability arising from the fact of Turney's confinement, but that they were only qualifiedly immune from liability arising from the conditions in which he was held.
 
 DISCUSSION
 
 5
 Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967); Van Sickle v. Holloway, 791 F.2d 1431, 1434-35 (10th Cir.1986), "official[s] charged with the duty of executing a facially valid court order enjoy[ ] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." Valdez v. City & County of Denver, 878 F.2d 1285, 1286 (10th Cir.1989); see Wiggins v. New Mexico State Supreme Court Clerk, 664 F.2d 812, 815 (10th Cir.1981), cert. denied, 459 U.S. 840, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982); T & W Inv. Co. v. Kurtz, 588 F.2d 801, 802 (10th Cir.1978); see also, e.g., Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir.1988); Coverdell v. Department of Social & Health Servs., 834 F.2d 758, 764-65 (9th Cir.1987); Henry v. Farmer City State Bank, 808 F.2d 1228, 1238-39 (7th Cir.1986); Property Management & Invs., Inc. v. Lewis, 752 F.2d 599, 602 (11th Cir.1985); Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981); Fowler v. Alexander, 478 F.2d 694, 696 (4th Cir.1973); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.), cert. denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); Bradford Audio Corp. v. Pious, 392 F.2d 67, 72-73 (2d Cir.1968). This quasi-judicial immunity applies with full force to a judicial order that a person be detained for mental evaluation. See Slotnick v. Garfinkle, 632 F.2d 163, 166 (5th Cir.1980); Sebastian v. United States, 531 F.2d 900, 903 (8th Cir.), cert. denied, 429 U.S. 856, 97 S.Ct. 153, 50 L.Ed.2d 133 (1976); Arensman v. Brown, 430 F.2d 190, 194-95 (7th Cir.1970); Hoffman v. Halden, 268 F.2d 280, 300 (9th Cir.1959); Kenney v. Fox, 232 F.2d 288, 290 (6th Cir.1956); Francis v. Lyman, 216 F.2d 583, 588 (1st Cir.1954); Holmes v. Silver Cross Hospital, 340 F.Supp. 125, 131 (N.D.Ill.1972).
 
 
 6
 Turney contends that the defendants in this case are not entitled to absolute quasi-judicial immunity because Judge Wolking's order was not "facially valid" insofar as it violated several Oklahoma statutes.[2] We need not address these arguments. Even assuming that the order was infirm as a matter of state law, it was facially valid.[3] "Facially valid" does not mean "lawful." An erroneous order can be valid. See, e.g., Baker v. McCollan, 443 U.S. 137, 143-44, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979).
 
 
 7
 To accept so narrow a conception of facial validity would eliminate much of the immunity granted just last year in Valdez. State officials "must not be required to act as pseudo-appellate courts scrutinizing the orders of judges," Valdez v. City & County of Denver, 878 F.2d at 1289, but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect. To allow plaintiffs to bring suit any time a state agent executes a judicial order which does not fulfill every legal requirement would make the agent "a 'lightning rod for harassing litigation aimed at judicial orders.' " Id. (quoting T & W Inv. Co. v. Kurtz, 588 F.2d at 802). Simple fairness requires that state officers "not be called upon to answer for the legality of decisions which they are powerless to control." Valdez v. City & County of Denver, 878 F.2d at 1289.
 
 
 8
 A narrow conception of facial validity also would deprive the court of most of the benefit it derives from the existence of quasi-judicial immunity for officers carrying out its orders. " 'The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised,' " but state officers subject to litigation "might neglect the execution" of those orders. Id. at 1288 (quoting Coverdell v. Department of Social & Health Servs., 834 F.2d at 765). Also, "a fear of bringing down litigation on the [officer executing the order] might color a court's judgment in some cases." Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir.1976). If the court ignored the danger of such suits, "[t]ension between trial judges and those officials responsible for enforcing their orders inevitably would result." Valdez v. City & County of Denver, 878 F.2d at 1289. "The public interest demands strict adherence to judicial decrees," id., especially with respect to emergency detention orders, for immediate treatment often is necessary and the class of officials qualified to carry out the order is limited.
 
 
 9
 "We do not hold that the unquestioning execution of a judicial directive may never provide a basis for liability against a state officer." Sebastian v. United States, 531 F.2d at 903 n. 6; see also Czikalla v. Malloy, 649 F.Supp. 1212, 1214 (D.Colo.1986). There are limits to how unlawful an order can be and still immunize the officer executing it. Because quasi-judicial immunity derives from judicial immunity, the order must be one for which the issuing judge is immune from liability. Therefore, a state official is not absolutely immune from damages arising from the execution of an order issued by a judge acting "in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872)). Also, quasi-judicial immunity will not attach to state officials acting "outside the scope of their jurisdiction." Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir.1989); Williams v. Wood, 612 F.2d 982, 985 (5th Cir.1980).
 
 
 10
 Applying this standard, it is clear that the defendants enjoy absolute immunity for admitting Rocky Turney to Central State. It was within Judge Wolking's jurisdiction to order a juvenile detained for mental evaluation, Okla.Stat.Ann. tit. 20, Sec. 123(A)(10) (West Supp.1990) (special district judges may hear "[a]ny matter at any stage ... in a ... mental health [or] juvenile ... proceeding"), and certainly the staff of Central State had the authority to admit a patient for that purpose. We are not willing to put officials executing court orders in the position of having to choose between "disregard[ing] the judge's orders and fac[ing] discharge, or worse yet criminal contempt, or ... fulfill[ing] their duty and risk[ing] being haled into court." Valdez v. City & County of Denver, 878 F.2d at 1289. Because Rocky Turney was admitted to Central State pursuant to Judge Wolking's order, the defendants are absolutely immune from liability for that action.
 
 
 11
 The district court failed to take into account, however, that this absolute immunity extended only to acts prescribed by Judge Wolking's order, see Morrison v. Jones, 607 F.2d 1269, 1274 (9th Cir.1979), cert. denied, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980), and that all the order decreed was Turney's confinement at Central State. It did not dictate any specific placement or treatment within the facility. Therefore, the defendants are not absolutely immune from liability arising from Turney's placement in the maximum security ward. Instead, they are only qualifiedly immune. See Garrett v. Rader, 831 F.2d 202, 203 (10th Cir.1987).
 
 
 12
 Turney's complaint alleged that the conditions of his confinement violated his constitutional rights in two ways: because he was detained in association with "criminal, vicious, or dissolute persons," Okla.Stat.Ann., tit. 10, Sec. 1107.1(A)(2) (West 1987), in violation of a state-created liberty interest, and because he was placed in an unsafe environment.[4] See R.Vol. I, Ex. A at 9. After examining the record and the governing law, we cannot determine whether the defendants' conduct with respect to these charges was within their qualified immunity. We therefore remand the case for further consideration of these issues.
 
 
 13
 The judgment of the district court is AFFIRMED in part and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Frank G. Theis, Senior Judge, U.S. District Court, for the District of Kansas, sitting by designation
 
 
 [1]
 Turney argues that this writ collaterally estopped the defendants from contesting the illegality of his detention. This argument is unavailing for a number of reasons. The only one we need mention is that collateral estoppel applies only to issues which have been actually and necessarily decided. Willner v. Budig, 848 F.2d 1032, 1034 (10th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). The petition for the writ gave two reasons why Turney's confinement allegedly was unlawful: that the oral detention order was invalid and that he was being held in an improper ward. See R.Vol. I, Ex. C at 66 (petition for writ of habeas corpus). The order granting the writ stated only that "no legal cause [had been] shown for such holding and restraint or for the continuation thereof," without giving any reasons. In re Turney, No. C-87-994-T, slip op. at 1 (Cleveland County Dist. Ct. Apr. 8, 1987). Because either proposed reason would have been a sufficient ground for granting the writ, it cannot be said that either issue was actually and necessarily decided. Restatement (Second) of Judgments Sec. 27 comments e-i (1980). Therefore, the writ has no preclusive effect
 
 
 [2]
 It is argued that Okla.Stat.Ann., tit. 43A, Sec. 5-102 (West Supp.1990) ("No person shall be accepted into any institution without the use of the official forms properly executed.") renders an oral emergency detention order invalid. The substance of the order is alleged to be faulty because it does not satisfy the requirement in Okla.Stat.Ann., tit. 10, Sec. 1120(B)(1) (West 1987) that a juvenile be evaluated in the mental health facility nearest to the child's residence which has been designated by the Commissioner of Mental health as appropriate for such evaluations
 
 
 [3]
 Turney places great reliance upon this court's decision in Taylor v. Gilmartin, 686 F.2d 1346 (10th Cir.1982), cert. denied, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). Taylor has no bearing on the present case. The question there was whether the order pursuant to which the defendants acted was sufficient to defeat the plaintiff's claim for false imprisonment. See id. at 1352-53. Whether the order would have been sufficient to immunize the defendants from liability, a completely unrelated question, was not discussed
 Also, Taylor was a case where the defendants themselves obtained the order under which they claimed immunity, and they obtained it in bad faith. Id. at 1348-49. Such an order does not provide the same quasi-judicial immunity as an order which the defendant played no part in procuring, so cases such as Taylor are to be distinguished. Guerro v. Mulhearn, 498 F.2d 1249, 1256 (1st Cir.1974); Jobson v. Henne, 355 F.2d 129, 134 (2d Cir.1966); Thompson v. Sanborn, 568 F.Supp. 385, 390 (D.N.H.1983); Dick v. Watonwan County, 551 F.Supp. 983, 990-91 n. 10 (D.Minn.1982); Farmer v. Lawson, 510 F.Supp. 91, 95 (N.D.Ga.1981). But cf. Boullion v. McClanahan, 639 F.2d 213, 214 (5th Cir. Unit A Mar.1981).
 
 
 [4]
 A third argument, that Turney was not provided the least restrictive method of treatment which was appropriate in violation of Okla.Stat.Ann., tit. 10, Sec. 1129(2) (West 1987), is raised in Turney's briefs. This issue was not raised below. "A matter not pursued before the trial court, such as this one, is 'inappropriate for consideration on appeal.' " Adams-Arapahoe School Dist. No. 28-J v. Continental Ins. Co., 891 F.2d 772, 776 (10th Cir.1989) (quoting Stephens Indus., Inc. v. Haskins & Sells, 438 F.2d 357, 361 (10th Cir.1971))